546 P.2d 826

**Mary Ann DOWNES and Ramon V. Estrada, Deceased, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Duval Sierrita Corporation, Respondent Employer,**

**Duval Sierrita Corporation, Respondent Carrier.**

No. 12240–PR.

Supreme Court of Arizona, In Banc.

Feb. 18, 1976.

Rehearing Denied March 23, 1976.

---

Davis, Eppstein and Tretschok by Dale D. Tretschok, Tucson, for petitioners.

Gregory L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondents Employer and Carrier.

CAMERON, Chief Justice.

This is a petition for review of a memorandum decision of the Court of Appeals, Division One, affirming a decision of the Industrial Commission of Arizona denying death benefits as a result of the death of Ramon V. Estrada.

We must answer only one question and that is whether the deceased, Ramon V. Estrada, died in the course and scope of his employment.

The facts necessary for a determination of this matter are as follows. On the evening of 18 December 1971, deceased, Ramon V. Estrada, was employed as a laborer for the respondent Duval Sierrita Corporation. He was working on the swing shift which starts at 3:30 p.m. and extends to 11:30 p.m. When the shift was started he was assigned to "A" dump, but later, at about 5:00, he was transferred to work as a help-er on Drill No. 64. When he arrived at the drill he found it shut down because of electrical problems. He proceeded to clean up around the area of the drill and ate lunch at the normal lunchtime, between 7:30 and 8:00. The particular drill in question never did get into service that night and the crew, after cleaning up, had nothing to do.

On the particular shift in question, a Lee Pitsch, because of his seniority as a laborer, was assigned the easier job of driving the water truck which delivered drinking water to the various crews throughout the open pit mine. Because it was cold that night, there was not a great demand for water and he finished his deliveries at about 8:00. He then stopped at Drill No. 64 and entered into a conversation with Estrada. The testimony is in dispute as to whether Estrada wished to borrow the truck to go use the bathroom or whether or not he and Pitsch agreed to change jobs for the rest of the shift. Estrada was not authorized to drive the water truck as it was the policy of Duval to require employees assigned to this job to accompany a trained driver for at least three shifts before they could qualify for such duty. The hearing officer found, however:

"19. That the evidence fails to establish that the decedent herein was cognizant of the employer's rules which he violated, or that those rules were enforced within the meaning of *Goodyear Aircraft Corporation v. Gilbert* * * * [65 Ariz. 379, 181 P.2d 624 (1947)]."

After Estrada left with the pickup truck, Pitsch stayed. Mr. Capello, who was supervisor of the laborers, stated:

"When I came back out [of the drill cab] he [Estrada] had already went down the hill with the pick-up truck, and I told Pitsch—I said, 'it is not a good rule unless you ask an operator or something, you could have taken Ramon [Estrada] to the bathroom. That is the way it is supposed to be worked, take him to the bathroom.'"

Estrada had borrowed the truck for this very same purpose a week before and had returned in about 10 minutes. The road taken by Estrada from the drill area was the same road he would have had to take to go to the change room where the bathroom was located. However, the testimony of Lee Pitsch taken at his deposition in Montana indicates that Estrada may have taken the truck for another purpose.

At Pitsch's deposition taken in Montana, Pitsch indicated that he decided to stay at the drill site and let Estrada have the truck. Petitioner's attorney questioned him extensively on this point indicating that Pitsch had earlier stated that Estrada wanted the truck to go to the bathroom:

"Q Then you have absolutely no recollection of discussing with me that Mr. Estrada was going to the rest room or change room on the night in question?

"A I remember you mentioning it. Why is it so important that he was going to the rest room?

"Q The only reason it's important is that that's what you told me when we had our conversation and that's what prompted our trip down here. The only thing I can say to you is that I am rather surprised that you can't recall it since I also included it in several letters that I wrote to you. You have no recollection of discussing it at all?

"A (No answer.)

"Q You are not just angry because we force you to come in here today?

"A Well, I'm not too happy about you suing that truck driver.

 * * * * * *

"Mr. Tretschok: The conversation I am referring to is the conversation I had with Mr. Pitsch in December, 1972, following the accident in which the conversation began with Mr. Pitsch indicating that that was the time that Estrada had borrowed the truck to go to the rest room and

that was the conversation that I am referring to, not the other witness who also said Mr. Pitsch said that.

"Q (By Mr. Tretschok) This doesn't change your testimony or your memory?

"A (No answer.)

"Q Would you answer for the record?

"A He may have said he was going to the change room, I don't know."

In any event at approximately 8:10 p.m. the pickup was run over by a 150 ton ore truck driven by a fellow-employee and Estrada was crushed to death.

Mary Ann Downes filed a claim with the Industrial Commission on behalf of herself, two step-children of the deceased, and the natural child of herself and deceased born after the accident.

The hearing officer denied the petitioner's claim stating:

"18. That the applicant has failed to bear the burden of proof imposed upon her by law. (citations omitted)"

■ We disagree with the hearing officer's conclusion. There is a presumption that if an employee is injured while on company property during working hours, he is injured while within the scope and course of his employment:

" * * * We hold that when an employee is going to or coming from his place of work and is on the employer's premises he is within the protective ambit of the Workmen's Compensation Act, at least when using the customary means of ingress and egress or route of employee's travel or is otherwise injured in a place he may reasonably be expected to be." *Pauley v. Industrial Commission,* 109 Ariz. 298, 302, 508 P.2d 1160, 1164 (1973).

And:

" * * * [T]he source of the injury was sufficiently associated with the employment as to constitute a risk to which claimant was subjected in the course of her employment, and to which she would

not have been subjected had she not been so employed. * * *" *Royall v. Industrial Commission*, 106 Ariz. 346, 351, 476 P.2d 156, 161 (1970).

■ There is a further presumption that when a workmen is killed on the job he was, at the time of the fatal accident, within the scope and course of his employment:

"The petitioner contends that under these circumstances a presumption or at least an inference arises to the effect that Martin was within his employment at the time of the accident. For support she relies upon the annotation in 120 A. L.R. 683 and the rule stated therein as follows: 'It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, *or where he might properly have been in the performance of his duties during the hours of his work,* in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.' (Emphasis supplied.)

* * * * * *

"The legal proof required in these cases in order to sustain the burden may be either direct, circumstantial or presumptive. We believe that the petitioner in the instant case has adduced enough uncontradicted facts to raise a rebuttable presumption that the deceased was within his employment at the time of the accident, which under all the circumstances of this case is not unreasonable or unfair to the commission. Where there is no evidence produced to rebut this presumption, it is controlling and sufficient upon which to predicate an award. * * *" *Martin v. Industrial Commission*, 73 Ariz. 401, 404–405, 242 P.2d 286, 288–289 (1952).

The petitioner, by showing that the deceased was injured and died on company premises during working hours, raised a rebuttable presumption that the deceased died in the scope and course of his employment. The evidence introduced to rebut this presumption indicated that deceased's absence from the drill site was unauthorized. The hearing officer then found that Estrada met his death without the scope and course of his employment. Even if we admit that the deceased's absence from the drill site was unauthorized, this is not dispositive of the matter. If the defendant was, in fact, going to use the bathroom as the evidence strongly suggests, he would be within the "personal comfort rule" and would be covered:

"There is another general rule of law within which, petitioner argues, her case falls, which she calls the 'personal comfort' rule. Unquestionably, such a general rule finds acceptance in Arizona. In *Nicholson v. Industrial Commission*, 76 Ariz. 105, 110, 259 P.2d 547, 550 (1953), we noted that lunching on the premises is generally recognized to be within the course of employment, and likewise we noted the many decisions to the effect that getting fresh air, smoking, resting, eating food and ice cream, quenching thirst, using a telephone, toilet or other facility, washing and gathering up working clothes, are treated as arising out of the employment." *Pauley v. Industrial Commission*, 109 Ariz. 298, 302, 508 P.2d 1160, 1164 (1973).

If, however, as the respondent employer contended, the deceased had left the job site to roam around the mine while waiting for work to commence at the drill site, he would still be covered under the "idle time" rule. Larson has stated:

"A workman who is idle for lack of immediate work does not deviate from his employment by utilizing the idle interval for rest or sleep. He cannot be expected in view of what we know of human nature, to remain at attention like a soldier, and, on the whole, it probably is for the employer's benefit to have him refresh himself * * *.

* * * * * *

**94**

"The leeway accorded an employee during an enforced hiatus in his work extends not only to resting and sleeping but also to a certain amount of wandering around and even undertaking what otherwise might seem to be distinctly personal activities. * * *" Larson On Workman's Compensation, § 21.74, p. 5–48, 5–49.

 In the instant case, there was nothing for deceased to do. Whether he had changed jobs with Pitsch or just wanted to do something else while waiting for work to commence is immaterial. Estrada was there, on company property. There is no evidence to indicate that he was not available for work when work was available. He was killed by a company truck driven by a company employee and he was killed during working hours. The evidence does not reasonably support a finding that overcomes the presumption that he was killed in the scope and course of his employment.

Award set aside.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.