691 P.2d 320

**SKYVIEW COOLING COMPANY, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Ramon Amador, Respondent Employee.**

**No. 1 CA–IC 3057.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 15, 1984.

Robert K. Park, Chief Counsel, State Compensation Fund by Christopher E. Kamper, Phoenix, for petitioners.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

**556**

Luis E. Kame, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This is a special action review of an Industrial Commission award for a compensable myocardial infarction. The sole issue is whether the respondent employee (claimant) satisfied his burden of proving that exertion at work *substantially* contributed to the infarction. After thoroughly reviewing the record, we conclude that sufficient evidence was presented to satisfy claimant's burden of proof. We therefore affirm the award.

On the early morning of March 15, 1982, the claimant, a farm worker for over thirty years, began work cutting lettuce for the petitioner employer in the vicinity of Yuma, Arizona. According to the testimony of the claimant it had been raining for three or four days and as a result, the fields were so wet that he was often knee deep in mud.[1] He further testified that, at times, it was necessary for him to use both hands to pull his legs out of the mud in order to walk. After some two hours of heavy work, he developed severe chest pain, and was rushed to the hospital. The treating physician, internist Henry Meyer, M.D., diagnosed an acute myocardial infarction.

Although claimant was diabetic and had been taking insulin for seven years, was slightly obese and a moderate smoker, he had not previously encountered any heart-related problems of any type. According to the medical testimony which was presented, these factors (diabetes, obesity and smoking) are recognized as risk factors for the development of coronary artery disease.

The claim for benefits was denied, and, based upon a timely request, hearings were scheduled. Pending these hearings, cardiology specialist Allan I. Cohen, M.D., examined the claimant. His February 8, 1983 report indicated that the relationship between work and the infarction was coincidental:

2. The etiology (specific cause) of coronary artery disease—the anatomical substrate of said infarction—is presently unknown. There is no scientific evidence indicating an occupational origin. In the present case, presence of insulin-dependent diabetes mellitus would constitute a strong risk factor portending the development of vascular disease.

3. Although symptoms heralding acute myocardial infarction began at work, it would appear that his responsibilities were usual and did not exceed his general physical capabilities. Specifically, the claimant has been a field worker for approximately 30 years. Thus, while symptoms began at work, there appears only to be a temporal—rather than a causal—relationship to those poorly understood hemodynamic events which culminated in acute myocardial infarction. In my opinion his employment responsibilities did not aggravate the underlying morbid anatomical process and were not a substantial contributing cause of myocardial infarction.

Dr. Cohen's hearing testimony confirmed this opinion. On cross-examination, however, he admitted that he had not been provided with a history of muddy working conditions or with information that claim-

---

1. It appears to be undisputed that it had been raining in the Yuma area for a few days prior to March 15, 1983. In this regard finding of fact number 9 in the Administrative Law Judge's decision and award states:

   9. Submitted into evidence by the defendants was a report which stated that the National Weather Station at Yuma Airport recorded that beginning March 1, 1982, the following were the amounts of rainfall:

   March 11, 1982—.03
   March 12, 1982—.32

   March 14, 1982—.48
   The next recording of rainfall was on March 18, 1982, however, the applicant was injured on March 15, 1982, and therefore rainfall after said date would not be relevant. Unfortunately, the aforementioned amounts of rainfall in and of themselves do not indicate the condition of the fields, but do confirm that it had rained for several days prior to the 15th and in that sense corroborate applicant's testimony to that effect.

ant had found it necessary to use both hands to pull his legs out of the mud in order to walk and do his work. Notwithstanding his lack of knowledge of actual working conditions and of the increased physical exertion by claimant under these actual working conditions, Dr. Cohen stated that consideration of the actual working conditions of that particular day would probably not change his opinion, "because of my personal experience with this disease process, and the time of onset in the majority of the patients I have dealt with."

Dr. Meyer also appeared and testified. On direct examination, he was asked whether the claimant's work exertion contributed to the infarction. He testified that it did contribute. He explained that the cause of infarction is not understood, but that narrowed coronary arteries, arterial spasm, and clotting all play a part. He acknowledged that coronary artery disease is years in formation and that the relationship between exertion and spasm or clotting is not known. Nevertheless, in his opinion the claimant's exertion caused the infarction to occur *when it did.*

In explaining the basis of his opinion, Dr. Meyer stated:

*I think his exertion and heavy work was in fact responsible.* How, I don't know. But I think the fact that he did have to, you know, do strenuous exercise on a man who had the foundations for an infarct or narrow coronary artery that he had a coronary infarct because of the exertion, or *it occurred at that time because of the exertion.* (Emphasis added)

In further explaining the reason for his opinion, Dr. Meyer stated:

But I think that the work was related to the infarct. It would cause it to happen at that particular time. I can't say that he wouldn't have had an infarct resting six months later, but I think *the reason he had the infarction at that time was because of the heavy work he did at that time.* (Emphasis added)

He disagreed with Dr. Cohen's opinion that the relationship was coincidental:

[Dr. Cohen] states that he thought it just occurred at that time by chance. *I disagree with him. I think that it occurred at that time because he was doing the heavy work.*

*I disagree with Dr. Cohen. I think it was the straw that broke the camel's back, was the additional work that did it.* I think he did have a substrate where he could have an infarction, and I think the additional work caused the infarct.

Maybe Dr. Cohen has something for—I don't know what to say, but I disagree with his conclusion that they're not causally related. I think they are. (Emphasis added)

On cross-examination, Dr. Meyer stated that the claimant's exertion was but one of the causes contributing to the infarction. He reiterated, however, that the infarct occurred when it did because of the exertion while claimant was working.

The administrative law judge issued the award for a compensable claim. The dispositive findings state:

4. *A.R.S.* § 23–1043.01 A. states:

A heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of the employment and is not compensable pursuant to this chapter unless some injury, stress or *exertion* related to the employment was a substantial contributing cause of the heart-related or perivascular injury, illness or death. (emphasis added)

\* \* \* \* \* \*

6. In *Bell Road Mini Storage v. Industrial Commission,* 124 Ariz. 493, 605 P.2d 895 (1980), the Supreme Court stated:

Nearly twenty-five years ago, in *Phelps Dodge Corporation v. Cabarga,* 79 Ariz. 148, 285 P.2d 605 (1955), we held that where the usual exertion of employment precipitates a heart attack it is compensable under the Workmen's Compensation Act of this State. We also held that the exertion, wheth-

er usual or unusual, must be of such a character that the injury can be traced to it with reasonable assurance that the work caused or contributed to the injury, ...

7. Although both Dr. Meyer and Dr. Cohen had opposing opinions regarding whether there was any relationship between applicant's work activities on March 15, 1982, and his myocardial infarction, both physicians were in agreement that said work activity did not cause applicant's infarct. The only issue, therefore, was whether applicant's work activities contributed to his sustaining his infarct on March 15, 1982. Dr. Meyer based his opinion on the history he had of applicant working under heavy muddy conditions....

Dr. Cohen based his opinion of no relationship on a history of applicant performing his usual responsibilities although the fields were wet. He testified that he did not have the history of applicant working under muddy conditions and having to lift his feet with his hands and stated that his opinion would still remain the same even with such a history.

\* \* \* \* \* \*

10. *Considering all the evidence, the applicant has sustained his burden of proof that his work related activities on March 15, 1982, were a substantial contributing cause of his myocardial infarction.*

(Emphasis added). The award was affirmed on administrative review, and this special action followed. On review, the employer and carrier contend that the administrative law judge applied a superseded standard of medical causation. We disagree.

A.R.S. § 23–1043.01(A) governs the compensability of this case. The general rule of medical causation is that any industrial contribution suffices for compensability. *See, e.g., Allen v. Industrial Commis-*

sion, 124 Ariz. 173, 602 P.2d 841 (App. 1979). Before A.R.S. § 23–1043.01(A), this general rule applied to heart cases. *See, e.g., McNeely v. Industrial Commission,* 108 Ariz. 453, 501 P.2d 555 (1972). Substantial contribution is now required by statute. *See Bush v. Industrial Commission,* 136 Ariz. 522, 667 P.2d 222 (1983) (dictum).

Although subsection 23–1043.01(A) changes the standard of medical causation, the new standard is not statutorily defined. Nor has it previously been judicially defined. Our aim in interpreting a statute is to give effect to the legislative intent. *E.g., Mardian Construction Co. v. Superior Court,* 113 Ariz. 489, 557 P.2d 526 (1976). We infer this intent from the language used in the context of the statute and the entire act of which it is a part. *E.g., Grant v. Board of Regents,* 133 Ariz. 527, 652 P.2d 1374 (1982). Unless this context requires otherwise, the language used has its usual meaning. *E.g., McIntyre v. Mohave County,* 127 Ariz. 317, 620 P.2d 696 (1980). The interpretation should preserve the meaning of other parts of the statute. *See State v. Deddens,* 112 Ariz. 425, 542 P.2d 1124 (1975).

Subsection 23–1043.01(A) is part of the Workmen's Compensation Act. *See* A.R.S. §§ 23–901 to –1091. The Act is liberally interpreted to achieve its remedial purpose of compensating injured workers. *See Young v. Environmental Air Products, Inc.,* 136 Ariz. 158, 665 P.2d 40 (1983). Although the subsection changes the prior causation standard, it also expressly permits compensation if *exertion* at work is a substantially contributing cause of the infarction. A.R.S. § 23–1043.01(A).[2] Yet, according to both of the medical experts who testified, the *predominant* cause of infarction is pre-existing coronary artery disease which is years in formation. It therefore logically follows that an interpretation of "substantial" requiring *predomi-*

---

**2.** A.R.S. § 23–901(7) defines "heart-related or perivascular injury ..." to include myocardial infarction.

*nance* would be medically impossible to satisfy. Considering the remedial purposes of the Act in which this statute is found, it would appear that an interpretation of "substantial" to mean more than insubstantial or slight avoids this impossibility. We therefore conclude that the term "substantial" in A.R.S. § 23–1043.01(A) means more than insubstantial or slight.

■ The employer and carrier assert that even assuming this liberal interpretation of "substantial," the claimant failed to satisfy his burden of proof. They first argue that he failed simply because Dr. Meyer was never asked if the contribution of the work-related exertion was "substantial". This, of course, is literally true. We disagree, however, that this omission is necessarily fatal. We would agree that it is the better practice for counsel, when eliciting an opinion from a medical witness on either direct or cross examination, to ask such question by using the statutorily expressed causative language. Indeed, it makes the decisional task of the Administrative Law Judge and this court much easier. However, proof does not require magic words. 3 A. Larson, *The Law of Workmen's Compensation* § 80.32 (1983). As realistically stated by Larson:

> The compensation process is not a game of 'say the magic word,' in which the rights of injured workers should depend on whether a witness happens to choose a form of words prescribed by a court or legislature. 3 A. Larson, *The Law of Workmen's Compensation* § 80.32(d) at 15–460—15–461 (1983).

■ When the "magic word" has not been used in the expression of a medical witness's testimony it becomes necessary for us, as in this case, to thoroughly and carefully review such testimony. If the testimony in the context in which it was given establishes *substantial contribution,* the burden of proof is satisfied.

■ The employer and carrier in arguing that claimant failed to meet his burden of proving "substantial contribution" contend that Dr. Meyer's "last straw" expression implied that the claimant's exertion only slightly contributed to the infarction. Notably, as seen from the previously quoted testimony, Dr. Meyer used this expression while voicing his disagreement with Dr. Cohen's opinion as set forth in his medical report. But the expression does not necessarily imply slight contribution. Again, the context in which it was used determines what was meant. On occasion, this expression is used to indicate only slight contribution. *See, e.g., Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963). But this is not a constant and, in contrast with this case, Dr. Meyer used the expression merely to indicate that the pre-existing coronary artery disease predisposed the claimant to have an infarction. It does not follow from this expression that the exertion at work only slightly contributed to the myocardial infarction.

■ The employer and carrier also argue that even if the exertion at work was a precipitant which caused the infarction to occur when it did, this does not prove substantial contribution. This argument equates slight contribution with precipitation. But this equation is overly broad. Once again, the context is determinative. A precipitant may merely contribute slightly, or, it may contribute substantially.

■ Applying the foregoing considerations and after thoroughly reviewing Dr. Meyer's testimony in context, we conclude that the claimant's burden of proving substantial contribution was satisfied. Dr. Meyer was firm that the claimant's exertion while performing heavy work caused the infarction to occur when it did. The context of this expressed opinion was based on the current medical understanding of the predominant cause of infarction together with the maximum contribution of exertion at work (considering actual working conditions) as a precipitant to infarction. In Dr. Meyer's opinion, that is what happened to the claimant. This, in our opinion, equates to substantial contribution and satisfied claimant's statutory burden of proving that exertion at work

substantially contributed to the myocardial infarction.

For the foregoing reasons, the award is affirmed.

GREER and HAIRE, JJ., concur.