806 P.2d 885

Paul J. KONICHEK (Deceased), Karen M. Konichek (Ex-Wife), Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Cota Robles Sheet Metal, Respondent Employer,

No Insurance Section, Respondent Party in Interest.

No. 2 CA-IC 89-0049.

Court of Appeals of Arizona, Division 2, Department B.

June 7, 1990.

Review Denied March 19, 1991.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for petitioner employee.

The Indus. Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

The Indus. Com'n of Arizona by Kent M. Struckmeyer, Phoenix, for respondent party in interest.

## OPINION

FERNANDEZ, Chief Judge.

In this special action for review of an Industrial Commission award, the petitioner contends the administrative law judge (ALJ) erred in failing to apply the unexplained death presumption and in deciding this case under A.R.S. § 23–1043.01(A) (heart-related injury, illness or death). Petitioner also questions whether the ALJ's findings were sufficient under *Post v. Industrial Commission*, 160 Ariz. 4, 770 P.2d 308 (1989). We agree that the ALJ erred in failing to apply the presumption and set aside the award.

Paul Konichek was a 28–year–old installation/maintenance employee of Cota Robles Sheet Metal. On Saturday, August 20, 1988, he was assigned to hook up an air conditioning unit and install thermostats in a single-family residence in Tucson. Testimony established that the units were already on the job site and that Konichek was not required to perform any strenuous work. His employer estimated that the job would take about six hours to complete. The site security guard records showed that Konichek arrived at 8:57 a.m. and again at 12:47 p.m., presumably after a lunch break. On Monday, August 22, the employer asked the construction foreman to look for Konichek after the employer was unable to contact Konichek on the CB radio. The foreman found Konichek dead in the porta-john at the job site.[1] His employer testified that Konichek was sitting with his hands on his lap and his head tilted back against the wall. He was dressed, and his pants were up. The foreman also testified that it looked as though there was blood on his nose and vomit in the urinal.

Konichek had been working inside the house in two small closet-like rooms, and the garage door and the doors to the areas where he was working were open. He had worked continuously throughout June, July and August. The weather records showed that the high temperature on the date of his death was 92 degrees, nine to 11 degrees cooler than the five previous days. His employer testified that Konichek had nearly completed the job assignment and that his tools and radio were found in the house.

Konichek's ex-wife filed a dependent's claim on behalf of their minor child. Petitioner requested a hearing after the claim was denied. The ALJ denied the claim and affirmed the denial on review. Because Cota Robles was uninsured at the time of Konichek's death, the Special Fund is potentially responsible for any benefits awarded, and the Industrial Commission has appeared on behalf of the employer. *See Evertsen v. Industrial Commission*, 117 Ariz. 378, 573 P.2d 69 (App.), *approved*, 117 Ariz. 342, 572 P.2d 804 (1977).

## UNEXPLAINED DEATH PRESUMPTION

■ The heart-related injury, illness or death statute provides in part as follows:

A heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some injury, stress or exertion related to the employment or some physical injury related to the employment was a substantial contributing cause of the heart-related or perivascular injury, illness or death.

A.R.S. § 23–1043.01(A). The term "substantial contributing cause" means more than insubstantial or slight but less than predominant. *Skyview Cooling Co. v. Industrial Commission*, 142 Ariz. 554, 691

---

1. Although it was not mentioned until oral argument, because of the personal comfort rule, the fact that Konichek was found in the toilet does not render the heart attack non-compensable.

*See Pauley v. Industrial Commission*, 109 Ariz. 298, 508 P.2d 1160 (1973) and *Hansen v. Industrial Commission*, 141 Ariz. 190, 685 P.2d 1342 (App.1984).

P.2d 320 (App.1984); *see also Phelps v. Industrial Commission,* 155 Ariz. 501, 747 P.2d 1200 (1987).

■ An employee's customary occupational stress and exertion are sufficient to constitute a substantial contributing cause of a heart attack. *Aguiar v. Industrial Commission,* 165 Ariz. 172, 797 P.2d 711 (App.1990). In that case, a farm worker, who was performing his usual employment tasks of carrying loads of boxes to the harvesting area, suffered a heart attack and died. After a lengthy discussion on previous cases and the legislature's enactment of § 23–1043.01, the court concluded that heart attacks are compensable if they are caused by customary occupational stress or exertion. It also ruled that expert testimony may not be presented that is "grounded in the premise that customary stress or exertion *cannot* cause a heart attack." *Id.* at 177, 797 P.2d at 716 (emphasis in original).

■ There are no cases in Arizona that discuss the relationship between § 23–1043.01(A) and the unexplained death presumption. The presumption operates to relax a claimant's burden to prove that death occurred in the course of employment. Larson explains the rule as follows:

When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment.

1 A. Larson, *The Law of Workmen's Compensation* § 10.32 at 3–100 (1989), *quoted* with approval in *Martin v. Industrial Commission,* 75 Ariz. 403, 411, 257 P.2d 596, 601 (1953). *See also Downes v. Industrial Commission,* 113 Ariz. 90, 546 P.2d 826 (1976) and *Bennett v. Industrial Commission,* 163 Ariz. 534, 789 P.2d 401 (App. 1990).

■ Although petitioner raised the unexplained death presumption issue, the ALJ did not mention it in his award. Instead, he made the following findings:

7. This statute [A.R.S. § 23–1021(A)] requires that in order for a death to be compensable it must arise out of and occur in the course and scope of the deceased's employment. Additionally, inasmuch as the cause of death in the instant case is due to cardiac dysrhythmia, all of the material elements of *A.R.S.* Sec. 23–1043.01 must be established....

\* \* \* \* \* \*

9. Although, [sic] 'substantial contributing cause', has been defined as meaning more than slight or more than insubstantial, see *Skyview Cooling Co. v. Indus. Com'n of Ariz.,* 142 Ari[z]. 554, 691 P.2d 320 (App.1984), the job related activities must be of such a character that the heart related condition can be traced to it with a reasonable assurance that the work caused or contributed to it. *Bell Road Mini Storage v. Industrial Com'n,* 124 Ariz. 493, 605 P.2d 895 (1980). There must be a recognizable cause or connection between the heart related condition and the work related activity. *Bush v. Industrial Com'n of Arizona,* 136 Ariz. 522, 667 P.2d 222 (1983). There is no rule of thumb that an injury is compensable merely because it was incurred during working hours or because it occurred within linear measurements of the employer's premises. *Royall v. Industrial Commission,* 106 Ariz. 346, 476 P.2d 156 (1970).

None of the cases the ALJ cited is an unexplained death case.

Dr. Alan Jones, the forensic pathologist who performed the autopsy, testified that although he did not know with absolute certainty why Konichek had died, his opinion was that it was due to cardiac dysrhythmia. The evidence was that Konichek was in good health and had no known pre-existing condition. The pathologist acknowledged that the fact that the body was decomposing made it difficult for him to determine the exact cause of death. He testified that if he had not learned that Konichek's father had died of a cardiac problem in his late forties or early fifties,

he would have listed the cause of death as unknown.

Many times during his examination, the doctor responded that he found it difficult to answer questions about a causal connection between Konichek's activities and his death because of his uncertainty about the exact nature of Konichek's death. He testified that when a predisposition to cardiac dysrhythmia exists, any kind of activity can be implicated in triggering an incident of dysrhythmia, such as vomiting, a sneeze or the Valsalva maneuver in having a bowel movement. The pathologist testified that the work Konichek was performing the day he died and the environmental factor of high temperatures could have contributed to the cardiac dysrhythmia that killed him. He also testified that the fact Konichek was alone at the time contributed to his death because persons suffering from cardiac dysrhythmia who go into ventricular fibrillation require immediate resuscitation to survive.

The ALJ accepted the pathologist's testimony that the cause of death was cardiac dysrhythmia. He then found, however: "After reviewing Dr. Jones' testimony and opinions, and having observed his demeanor, while testifying under oath, it is found that his testimony is speculative and equivocal." Those two findings are completely inconsistent.

Respondents contend that the unexplained death presumption does not apply in this case because the cause of death is not unexplained, pointing to the pathologist's determination that the probable cause of death was cardiac dysrhythmia. The presumption is applicable, however, even though the cause of death is known. In *Bennett, supra,* there was no question that the employee was killed by a gunshot. The court held that the presumption supplied the required employment connection between his activities and his death because of the lack of evidence as to the activities in which he was engaged immediately before he died. In that case, no one else was at the job site when the employee died.

"[T]he principal practical reason for the unexplained-death rule [is] the fact that death has eliminated the only witness who could supply the missing evidence demanded of his dependents." Larson, *supra,* at 3–119. *See also Circle K Store # 1131 v. Industrial Commission,* 162 Ariz. 560, 785 P.2d 80 (App.1989). This case is therefore like *Bennett.* No one can testify as to exactly what Konichek was doing at the time he suffered the attack of cardiac dysrhythmia because no one else was there. As Larson has observed, in jurisdictions such as ours that have

> adopted the rule that unusual exertion need not be proved in heart cases[, i]t would seem to follow that employment contribution could be adequately established by showing that decedent was engaged in his usual exertions and that his usual exertions were medically capable of helping to induce the heart attack.

Larson, *supra,* at 3–120. Larson notes that a causal connection between the exertion and the heart attack must still be shown for the heart attack to be compensable.

In light of the pathologist's testimony on causation, the holdings in *Bennett* and *Aguiar,* and the ALJ's inconsistent findings, we find that the ALJ erred in failing to consider and apply the unexplained death presumption.

The award is set aside.

LIVERMORE, P.J., and LACAGNINA, J., concur.