300

806 P.2d 889

ESTATE OF Robert L. PLEMONS,
Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

J Jon Corporation,
Respondent Employer,

State Compensation Fund, Respondent
Insurance Carrier.

Clara B. PLEMONS (Widow), Robert L.
Plemons (Deceased), Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

J Jon Corporation,
Respondent Employer,

State Compensation Fund, Respondent
Insurance Carrier.

No. 2 CA–IC 89–0051.

Court of Appeals of Arizona,
Division 2, Department B.

July 17, 1990.

Review Denied March 19, 1991.

Tretschok, McNamara & Clymer, P.C. by
Brian I. Clymer, Tucson, for petitioner employee and petitioner.

The Industrial Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

State Compensation Fund by W. Smith Michael, Tucson, for respondents employer and carrier.

## OPINION

FERNANDEZ, Chief Judge.

In this workers' compensation case, the employee's estate and his widow contend that the administrative law judge (ALJ) erred in failing to apply the unexplained death presumption and in deeming the widow's claim denied although no notice of claim status had been issued. We find no error and affirm the award.

Robert Plemons's body was found on June 11, 1987 near one of the portable toilets that he emptied and cleaned on the route he followed for his employer, J Jon Corporation. Plemons's duties were to pump out the toilet waste, scrub the tanks and walls, and fill the toilets with chemicals. The acting manager testified that at the time of his death, Plemons was assigned to clean 65 to 75 toilets in Sun City Vistoso and San Manuel. The chemical used by J Jon at that time was called Kan Kleen, and Plemons had been handling it for about two and a half years. Plemons's wife testified that he had looked gray and ill on the morning of his death and that she had urged him to stay home from work. Two co-workers testified that his appearance that day and the day before was the same as it was any other day.

Pathologist Dr. Allen Jones, who performed the autopsy, testified that Plemons had a 97 to 98% sclerosis of the most important artery of the heart, the left anterior descending artery, that a number of his organs reflected hardening of the arteries, that portions of his heart showed the effects of prior infarcts, and that he had suffered a fatal cardiac arrhythmia. An industrial health specialist and an industrial hygienist gave conflicting opinions. One testified that both the temperature on the date of his death and his exposure to the formaldehyde in Kan Kleen would have affected Plemons. The other testified that neither the heat stress nor the chemical would have affected him. A specialist in internal medicine and pulmonary disease testified that there was no relationship between Plemons's work activities and his death. A specialist in hematology and oncology testified that Plemons suffered from a lymphoma but that it had required no treatment. He also testified that Plemons had a fifteen-year history of diabetes.

Dr. Sullivan, an emergency medicine and medical toxicology specialist, testified that Plemons had a compromised health status at the time he died and that any increase in his physical activity could have caused the arrhythmia. On cross-examination, he testified that Plemons was "a walking time bomb."

Cardiologist Dr. Brendon Phibbs testified that Plemons died from cardiac arrhythmia brought on by severe coronary artery disease. He testified that Plemons's death had nothing to do with his occupation. In addition, he testified that ordinary life activities can precipitate cardiac arrhythmia in persons with severe heart disease such as Plemons had. The ALJ resolved the conflict in medical opinions in favor of Dr. Phibbs.

Two claims were filed, one by Plemons's estate for medical expenses incurred because of his death, and one by his widow. The Industrial Commission notified the carrier of the widow's claim on October 26, 1987. The carrier did not issue a notice of claim status as to that claim. At an informal conference on May 20, 1988, the ALJ found that the widow's claim was deemed to be denied.

During the several hearings held in this case, petitioner contended that the deceased's work activities had caused or contributed to his death. Petitioner attempted to present evidence that the chemical mixture used to clean the toilets had caused or contributed to his death. In addition, petitioner argued that the deceased had sustained cardiac arrhythmia because of job stress and/or heat stress and that his work activities were a substantial contributing cause of his death.

The ALJ found that petitioner had not established that job-related stress and exertion were a substantial contributing cause of Plemons's death and denied both claims. Petitioner was awarded penalty benefits on her widow's claim from October 26, 1987, the date the claim was filed, to May 20, 1988, the date the ALJ had deemed the claim denied.

On review, petitioner contends that the ALJ erred in failing to consider and apply the unexplained death presumption, arguing that the findings were insufficient under the holding of *Post v. Industrial Commission*, 160 Ariz. 4, 770 P.2d 308 (1989). She also contends that the ALJ erred in awarding penalty benefits only through May 20, 1988, noting that the carrier never sent a notice of claim status denying the claim.

## UNEXPLAINED DEATH PRESUMPTION

■ In her post-hearing memorandum, petitioner argued that the unexplained death presumption should apply. Our supreme court has explained the presumption as follows:

> '[W]hen it is shown that an employee was found dead at a place where his duties required him to be, *or where he might properly have been in the performance of his duties during the hours of his work*, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.'

*Downes v. Industrial Commission*, 113 Ariz. 90, 93, 546 P.2d 826, 829 (1976), *quoting Martin v. Industrial Commission*, 73 Ariz. 401, 404–05, 242 P.2d 286, 288 (1952) (emphasis in *Downes*). The presumption applies to the requirement that the injury occur in the course and scope of the claimant's employment; it may or may not apply to the requirement that the injury arise out of the employment. *See Konichek v. Industrial Commission*, 167 Ariz. 296, 806 P.2d 885 (App.1990) and *Bennett v. Indus-*

*trial Commission*, 163 Ariz. 534, 789 P.2d 401 (App.1990).

■ Petitioner complains initially that the ALJ did not consider the presumption. Because Plemons did not die as the result of an accident but as the result of heart disease, we must also address, as did the ALJ, the applicable statute. A.R.S. § 23–1043.01(A) provides:

> A heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some injury, stress or exertion related to the employment was a substantial contributing cause of the heart-related or perivascular injury, illness or death.

Thus, the fact that Plemons was found dead at one of the toilets along his route is not sufficient in and of itself to require the payment of benefits. The term "substantial contributing cause" means more than insubstantial or slight but less than predominant. *Skyview Cooling Co. v. Industrial Commission*, 142 Ariz. 554, 691 P.2d 320 (App.1984). *See also Phelps v. Industrial Commission*, 155 Ariz. 501, 747 P.2d 1200 (1987). An employee's customary occupational stress and exertion are sufficient to constitute a substantial contributing cause of a heart attack. *Aguiar v. Industrial Commission*, 165 Ariz. 172, 797 P.2d 711 (App.1990).

Petitioner argues that the case of *Konichek v. Industrial Commission, supra*, stands for the proposition that it is error for an ALJ not to consider and apply the unexplained death presumption when a person dies on the job and there are no witnesses to the death. The holding in *Konichek*, however, is not that broad. In *Konichek*, the pathologist testified that he could not state with certainty why the employee had died because the body was decomposing, the employee had no prior adverse medical history, the autopsy revealed no abnormalities of the heart, and the only evidence of any prior heart disease was the fact that the man's father had died of a heart ailment at an early age. Konichek

was only 28 when he died. In this case, however, the post-mortem examination revealed that the 61–year–old Plemons had a seriously diseased main artery, hardening of the arteries in a number of organs, and his heart showed evidence of previous infarcts.

There was no dispute among the experts that Plemons died because of his severe heart disease. The only dispute was on whether his job activities contributed to his death. On that issue, there was a conflict between the experts, and the ALJ resolved that conflict in favor of the expert whose opinion was that Plemons's occupation had nothing to do with his death. Although there were no witnesses to his death, Plemons's case clearly does not fall within the unexplained death presumption, and the ALJ properly did not apply the presumption.

We also find no merit to petitioner's argument that the ALJ failed to comply with *Post*. The findings properly summarize the testimony of each lay and medical witness and the applicable law.

### PENALTY BENEFITS

 Petitioner contends that she continues to be entitled to penalty benefits on her widow's claim because the carrier never sent her a notice denying the claim. At an informal conference in May 1988, the ALJ deemed the claim denied and consolidated the claim for hearing with the estate's claim. In her award, the ALJ found that although no notice had been sent, the purpose of the applicable statute was served by the May 1988 denial. A.R.S. § 23–1061(M) provides in part:

> If the insurance carrier ... does not issue a notice of claim status denying the claim within twenty-one days from the date the carrier is notified by the commission of a claim ..., the carrier shall pay immediately, compensation as if the claim were accepted, from the date the carrier is notified by the commission of a claim ... until the date upon which the carrier issues a notice of claim status denying such claim.

Although the better practice would be to issue a formal notice denying the claim, we agree with the ALJ's finding that the denial of the claim at the informal conference satisfies the purpose of the statute. It was understood from that time on that the claim was denied, and the parties then proceeded to participate in hearings on both claims. Petitioner belatedly contends that she objected to the procedure at the informal conference. The record, however, does not support that contention; no objection is noted there, as petitioner concedes.

The award is affirmed.

LIVERMORE and HOWARD, JJ., concur.