NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

ALEX GARCIA, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

VW CONNECT, *Respondent Employer*,

COPPERPOINT WESTERN INSURANCE CO, *Respondent Carrier*.

No. 1 CA-IC 21-0015
FILED 7-7-2022

---

Special Action - Industrial Commission
ICA Claim No. 20192-610150
Carrier Claim No. 1000013974
The Honorable Michelle Bodi, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Snow Carpio & Weekley PLC, Phoenix
By Chad T. Snow and Dennis R. Kurth (argued)
*Co-Counsel for Petitioner Employee*

Toby Zimbalist, Esq., Phoenix
By Toby Zimbalist
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

CopperPoint Insurance Company, Phoenix
By Sharon M. Hensley (argued)
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

**¶1** Petitioner Alex Garcia challenges an Industrial Commission award that found his injury not compensable because it was not causally related to his work. He argues that the expert medical testimony the administrative law judge ("ALJ") relied on cannot support that conclusion. We find no reversible error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Garcia has been a heavy machine operator for most of his adult life. In January 2019, he began working for VW Connect. Over the next six months, he began to experience back pain that worsened until he could not work starting in June 2019. In September 2019, he filed a workers' compensation claim. VW Connect's insurer, CopperPoint, denied the claim, and Garcia requested a hearing.

**¶3** At the hearing, the parties each offered testimony from medical experts who had conducted independent medical examinations, including physical examinations of Garcia and a review of his medical records. Both experts agreed that Garcia had symptomatic lumbar spinal stenosis, a degenerative disease in which the spinal canal through which nerves pass narrows over time and pinches the nerves, causing pain. One of the experts, Dr. Jeffrey Scott, concluded that Garcia's years of work as a backhoe and excavator operator aggravated his back condition, making it symptomatic. Garcia claimed that his work contributed to the onset of his symptoms because, as he described it, his body was "rocking and jumping around" while operating the equipment.

¶4 The other expert who testified, Dr. Lyle Young, concluded that Garcia's work did not contribute to his present condition. He diagnosed Garcia with the symptomatic progression of pre-existing degenerative spinal pathology, including L5-S1 spondylolisthesis and significant bilateral neuroforaminal stenosis. He explained Garcia's isthmic spondylolisthesis is a universally congenital problem that "is either present when one is born or develops . . . by the teenage years at the latest." And that "the natural history of that spondylolisthesis is a forward progression of the spine, [and] eventual nerve root impingement." He also testified:

> there's no evidence I can find in the medical literature that, you know, jarring activities or working with heavy machinery is—is at all implicated in the emergence of symptoms due to pre-existing spinal stenosis, even though there are occupational exposures that are implicated in certain disease processes. One that comes to mind is, for example, carpal tunnel syndrome. That is not the case when it comes to spinal stenosis, so both in my opinion and my review of the medical literature, there's no evidence that that would be the case.

During cross-examination, Dr. Young repeated:

> Also, figuring prominently in my opinion that is—and perhaps more so is, you know, the—my understanding of the line of work he's in, which is working on machinery with some jarring and vibration and things of like that, is not—is not an accepted mechanism in the medical literature to render spinal stenosis symptomatic.

Thus, the ALJ was presented with conflicting medical opinions about the cause of Garcia's worsening back condition.

¶5 After the record closed, but before the ALJ issued her decision, Garcia filed a medical article entitled "Whole-body vibration and postural stress among operators of construction equipment: A literature review." Garcia asserted that the article was posted on the Center for Disease Control website and requested that it be considered as rebuttal evidence.

¶6 VW Connect and CopperPoint objected to the article on timeliness grounds and asserted that it did not contradict Dr. Young's testimony. The ALJ issued an order acknowledging receipt and stating that she would not consider it because it was filed after the record closed. She allowed the parties more time to request reopening the record to recall the

expert witnesses "to discuss the study." She stated that she would issue a decision if she did not receive a request before the deadline. No request was filed, and the ALJ issued her decision.

**¶7**        The ALJ found Dr. Young's testimony more persuasive than Dr. Scott's. She issued an award denying compensability.

**¶8**        Garcia requested administrative review, again urging the ALJ to reopen the record to consider the literature review or, alternately, to allow the medical experts to testify about the article. After VW Connect and CopperPoint responded, the ALJ issued a Decision Upon Review. She found Garcia had waived his right to offer more medical expert testimony but admitted the literature review into evidence. She found the article did not support Garcia's theory because he had not testified that he had experienced "whole-body vibration and awkward posture." She also found that the article was tentative in its conclusions because it stated that the identified ergonomic risk factors might contribute to unspecified musculoskeletal disorders but that research on the issue is sparse. She concluded that the article did not "undermine" Dr. Young's conclusions and affirmed the award. Garcia then brought this statutory special action.

## DISCUSSION

**¶9**        We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). To show compensability, a claimant has the burden of proving an injury by accident arising out of and in the course of employment. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968). In addition, "[u]nless a causal connection is clearly apparent to a layperson, the relationship must be established by expert medical testimony." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985). We defer to the ALJ's resolution of conflicting evidence and affirm findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975). An award based on conflicting medical testimony will not be disturbed. *Smiles v. Indus. Comm'n*, 2 Ariz. App. 167, 168 (1965).

**¶10**        The general rule of medical causation in workers' compensation is that any industrial contribution to an injury is enough to show compensability. *Skyview Cooling Co. v. Indus. Comm'n*, 142 Ariz. 554, 558 (App. 1984). Thus, if Garcia's employment aggravated his pre-existing condition, he has shown a compensable injury. *Martinez v. Indus. Comm'n*,

192 Ariz. 176, 180, ¶ 17 (1998). Relying on Dr. Young's opinion, the ALJ concluded that Garcia's employment did not contribute to his condition.

¶11        Garcia argues that Dr. Young's testimony was based on the mistaken belief that the existing medical literature does not support Garcia's theory. He argues that because Dr. Young's opinion was based on this faulty premise, the opinion is unsupported and cannot sustain the ALJ's decision.

¶12        The ALJ admitted the literature review into evidence but concluded that the article did not contradict Dr. Young's testimony. After declining the opportunity to offer medical expert testimony interpreting the literature review, Garcia now argues that the ALJ misinterpreted the article. In any event, the ALJ considered the conflicting evidence presented by the medical experts and resolved the conflict in favor of the employer after finding its medical testimony was more probably correct. We conclude that the evidence reasonably supported the ALJ's finding on this record.

**CONCLUSION**

¶13        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA