561 P.2d 1244

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Doris Kay Austin (widow), Gary R. Austin (Deceased), Respondent Employee,**

**General Transportation, Inc., Respondent Employer,**

**Continental Casualty Company/CNA, Respondent Carrier.**

**No. 1 CA-IC 1539.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 3, 1977.

Rehearing Denied March 10, 1977.

Review Denied March 29, 1977.

Moore & Romley by Craig R. Kepner, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Jennings, Strouss & Salmon by Steven C. Lester, Ronald H. Moore, Phoenix, for respondent Carrier.

## OPINION

FROEB, Chief Judge.

We are asked to determine in this case whether the petitioning insurance carrier must provide coverage for death benefits.

The covered employee, Gary R. Austin, died in an accident on September 7, 1974, while driving a truck for General Transportation, Inc. (referred to as "General"). His widow and six children surviving him thereafter filed a claim pursuant to appropriate provisions of the Workmen's Compensation Act of Arizona.

Several weeks before the accident, action was taken by the insurance brokerage company representing General to shift workmen's compensation coverage from Continental Casualty Company/CNA (referred to as CNA) the respondent carrier, to United States Fidelity and Guaranty Co. (referred to as USF&G) the petitioner.

■ After proceedings involving considerable testimony and documentary evidence, the hearing officer decided that the CNA policy had been effectively cancelled and that the USF&G policy was in effect on the date of the accident. On review, we find sufficient evidence to support this determination and therefore affirm the award.

There is no question but that General was represented by its agent, Beaton-Susic Insurance Agency (referred to as the "Agency") in the various dealings and transactions involving workmen's compensation insurance. Accordingly, the Agency, at the outset, obtained from CNA a policy insuring General for its workmen's compensation liability. It also arranged for insurance with CNA to cover other risks. The workmen's compensation policy provided for a term from January 1, 1974 to January 1, 1975.

At some point during the Spring of 1974, CNA decided that the type of risk presented by General was not consistent with its underwriting philosophy and began discussion with Dave Beaton at the Agency concerning termination of the CNA policy. July 1, 1974, was chosen as the date when General's insurance would be placed with another company. Concern apparently developed over whether the proposed cancellation of the CNA policy would be "short rate" or "pro rata." It was agreed that cancellation would be pro rata, the effect of which would be to allow General the benefit of policy dividends as well as avoidance of a penalty premium. This was followed by efforts of the Agency to obtain coverage for General from USF&G to replace the CNA policy. The efforts were successful and USF&G agreed to issue the policy.

The CNA policy was to be cancelled effective August 2, 1974, and the USF&G policy was to become effective the same date. A letter setting forth the agreement was written by Phil Susic of the Agency to CNA, dated July 31, 1974, and it stated:

Cancel this WC policy effective 8-2-74. USF&G is writing another WC policy effective 8-2-74. Per your agreement, this policy is pro-rate [sic] and eligible for the dividend. Send your worksheet on the cancellation.

The letter was replied to in writing by Gordon Reynolds of CNA on August 8, 1974, stating:

Phil, I have to have a signed lost policy release or the original to cancel.

Following this exchange, USF&G issued its policy, delivered it to the Agency and billed the Agency for the premium. The facts do not clearly show whether the Agency actually paid the premium or whether it delivered the policy in turn to General, but for our resolution of this case it is immaterial. On the other hand, the original CNA policy was never returned to CNA, nor was a lost policy release given.

The testimony indicates that as of August 2, 1974, it was the intention of the Agency and CNA to terminate coverage under the CNA policy and likewise it was the intention of the Agency and USF&G to commence coverage for workmen's compensation liability.

Nothing further of significance occurred until September 7, 1974, when Gary Austin died as a result of the accident.

The events which followed the accident, coupled with the failure of General to return the CNA policy or provide a lost policy release, form the basis for the contention by USF&G that the CNA policy was never cancelled and that as a result the loss was covered by CNA.

Sometime between September 7, 1974 and September 30, 1974, Dave Beaton of the Agency returned from vacation unaware of what had transpired. He learned of the death of Gary Austin and found out

about the USF&G policy and the exchange of communications between Susic and Reynolds quoted earlier. He interpreted the Reynolds note of August 8 as rendering cancellation of the CNA policy ineffective without return of the original policy or a lost policy release. Apparently acting upon this assumption, Beaton returned the *USF&G* policy to USF&G on September 30, 1974, requesting that it be "cancelled flat" (meaning that no premium charge be made and that the policy be cancelled with the same effect as if it never had been issued).

Following this, the Industrial Commission notified CNA that its records showed coverage at the date of the accident by both USF&G and CNA. CNA responded that its policy had been cancelled. After this the Industrial Commission notified USF&G of the situation and it responded that its policy had likewise been cancelled.

In the course of several months following the accident, personnel of CNA, acting within various divisions of the company, undertook actions which USF&G contends confirm that the CNA policy was never cancelled. Between September 9 and 20, CNA's claims adjuster reviewed the CNA files, decided that there was a workmen's compensation policy in existence and undertook an investigation of the accident. In his report he mentioned that "there were no unresolved coverage questions," a statement leaned heavily upon by USF&G to indicate that the CNA policy was still in effect. Other CNA personnel reviewing the company files also concluded that the policy had not been cancelled since they could find no documentation to this effect. It was not until later that CNA officials became informed of the July 31/August 8 exchange of writing between the Agency and CNA's underwriting supervisor, Gordon Reynolds. Soon after, the company issued its notice of claim status denying the claim and asserting that its policy had been cancelled.

USF&G contends other events occurred which show that the policy was never cancelled. In November, 1974, CNA paid a workmen's compensation claim of $16 for another employee of General arising from an accident on November 17, 1974. In February, 1975, CNA performed an "audit" of the workmen's compensation policy, a routine procedure designed to determine what the final premium should be on the policy, that is, whether there would be an additional premium charged or a premium rebate given. As a result of the audit, it was determined that an additional premium was due the company on the basis of the full term of the policy from January 1, 1974 to January 1, 1975, and the Agency was billed accordingly, although there is no evidence that payment was made by General. The audit did not reflect a cancellation of the policy as of August 2, 1974.

In reaching his decision that the USF&G policy and not the CNA policy was in effect at the time of the loss on September 7, 1974, the hearing officer made various findings which we believe are supported by the evidence, and which, in turn, support his award. He found that during the period involved, Dave Beaton and the Beaton-Susic Agency acted in a representative capacity for General in negotiating a replacement of the workmen's compensation coverage; that on July 31, 1974, Phil Susic made a written request to CNA to cancel the policy which was mailed to and received by CNA; that the request confirmed that USF&G was writing a replacement policy for General effective August 2, 1974; that USF&G issued a policy insuring General for the period August 2, 1974 to August 2, 1975, which was mailed to the Agency on or about August 5, 1974; that following the death of Gary Austin, Dave Beaton returned the USF&G policy to USF&G requesting flat cancellation of the policy. The hearing officer concluded that "the widow and dependent children's rights to compensation accrued on the date of Austin's death; accordingly, the policy of insurance issued by USF&G cannot be altered or amended so as to defeat the rights that had accrued prior to said amendment." The award thus determined that USF&G and not CNA is the responsible carrier. We

find there is sufficient evidence to support this conclusion.

■ Although the award does not set forth the legal theory upon which it is based, we will take the undisputed facts, together with those found as true by the hearing officer, and determine if there is any reasonable basis in the evidence upon which the hearing officer could have reached his conclusion. *In re Estate of Bedwell,* 104 Ariz. 443, 454 P.2d 985 (1969). In doing so, we will consider the evidence and all inferences to be drawn therefrom in a light most favorable to sustaining the award. *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972).

■ The right to compensation accrues on the date of the employee's injury. *Ezell v. Industrial Commission,* 23 Ariz.App. 448, 533 P.2d 1185 (1975). Thus in this case, September 7, 1974 is the beginning point in determining if workmen's compensation insurance is in force covering the risk. As of that date, clearly the USF&G policy was in effect. But had the CNA policy been cancelled? We think it was.

■■ A policy of insurance may be cancelled at any time before loss in accordance with its terms. 43 Am.Jur.2d, *Insurance,* § 400, at 445. See also, *Northern Insurance Co. of N. Y. v. Mabry,* 4 Ariz.App. 217, 419 P.2d 347 (1966). USF&G argues at length that the terms of the policy regarding cancellation were not complied with and that therefore cancellation did not occur. The argument is premised upon the fact that neither General nor the Agency ever returned the policy or a lost policy release. We think the argument is incorrect, however, in view of the policy provision which states:

> This policy may be cancelled by the insured by surrender thereof to the company or any of its authorized agents or *by mailing to the company written notice stating when thereafter the cancellation shall be effective.* (Emphasis supplied)

Clearly General (through its agent) complied with this provision when Susic wrote the letter of July 31, 1974, quoted earlier. The fact that initially CNA wished to be relieved of coverage and later agreed that the premium would be calculated pro rata rather than short rate is of no consequence. The essential point is that the insured wished to cancel and could have done so without CNA's consent or agreement. We do not think that any provision of the policy required delivery of the policy or a lost policy release in order to make cancellation effective. While such might be the case if cancellation had been made unilaterally by CNA, clearly the cancellation was the result of the Susic letter of July 31, 1974, acting for General, the insured. This was the finding of the hearing officer in Finding No. 3, which states, in part: "Thus, by letter dated July 31, 1974, from Phil Susic to CNA, requesting cancellation effective August 2, 1974, the policy period ended on August 2, 1974."

USF&G points to the finding of the hearing officer that CNA initiated cancellation of the policy and gave notice thereof by its letter dated May 16, 1974, the pertinent part of which reads:

> We established a date of July 1st to have the account placed elsewhere.

USF&G then argues that the notice was inadequate for the purpose of complying with the provisions of the policy concerning cancellation by the company, and the hearing officer was therefore in error when he concluded that this letter brought about the cancellation. While we agree that it is arguable whether the May 16 letter could effectively give rise to cancellation, we do not agree that effective cancellation was dependent upon this letter and, contrary to the assertion of USF&G, we do not read the hearing officer's award as necessarily having been based upon this letter. We think it is equally as arguable that the hearing officer found that cancellation became effective through the writings of July 31 and August 8.

■ As for the actions of CNA after Gary Austin's death, namely, the claims investigation, the payment of the $16 claim and the premium audit, the hearing officer did not find that the August 2 cancellation was rescinded thereby or that the acts con-

stituted an agreement between CNA and General to reinstate the coverage. It is apparent that these actions were born out of an erroneous assumption by both CNA and Dave Beaton that the CNA policy was never effectively cancelled. The record is clear that this mistaken assumption originated with Dave Beaton's evaluation of the August 8 letter from Gordon Reynolds which he took to be a refusal by CNA to accept General's cancellation of the policy until the original policy or a lost policy release was returned. The obvious mutual mistake which occurred was legally insufficient to breathe life back into the cancelled CNA policy.

Having decided that as of the date of the loss the USF&G policy was effective and the CNA policy had been cancelled, what is the consequence of the Agency (through Dave Beaton) thereafter purporting to cancel the USF&G policy? We think it was of no consequence because the loss had already occurred. The loss was a legal charge against the policy and to relieve USF&G therefrom would impair vested rights. *Home Accident Insurance Co. v. Pleasant,* 36 Ariz. 211, 284 P. 153 (1930), (a workmen's compensation insurance case involving cancellation of a policy under a predecessor of A.R.S. § 23–961).

In summary, we find the USF&G policy was issued and delivered to the Agency prior to the loss. Likewise, the premium was established and billed to the Agency. It was fully effective on the date of the accident. On the other hand, the CNA policy was effectively cancelled prior to the accident. We hold that the various actions of the parties thereafter did not alter the legal rights in existence on that date. The award of the Commission is correct and accordingly we affirm it on review.

JACOBSON, P. J., and HAIRE, J., concurring.