OPINION
HAIRE, Judge.
On this review of an award entered by the respondent Commission in a workmen’s compensation proceeding, two issues are presented: (1) When the employer protests the Industrial Commission’s initial award in a “no insurance” claim, does the claimant have the burden of proving compensability at the subsequent administrative hearing; and (2) Did the administrative law judge abuse his discretion in this proceeding by denying compensability based upon his assessment of the credibility of the claimant.
The petitioner (claimant) was injured in a one vehicle accident involving a truck owned by the alleged employer. A third party was driving the truck when its brakes allegedly failed and it struck a pole. The claimant sustained multiple abrasions and contusions, lacerations, and fractures of the rib and cervical spine.
The claimant filed a claim for workmen’s compensation benefits. Because the alleged employer was uninsured, this claim was processed as a “no insurance” claim. See generally A.R.S. § 23-907. After an investigation, the Industrial Commission is *550 sued a compensability award.[1] The employer timely protested, and a hearing was scheduled before an administrative law judge.
At the hearing, the occurrence of the accident and the extent of claimant’s injuries were undisputed. The sole dispute concerned whether the alleged employer had hired the claimant to work on the day of the injury, or merely had loaned his truck to her. The evidentiary details relevant to the second issue will be discussed below.
After hearing the evidence, the administrative law judge issued a noncompensability award. He held that the claimant had the burden of showing that the accident arose out of and in the course of her employment. He found that the claimant’s testimony created “sufficient inferences and contradictions as to cast doubt on ... [her] credibility” and therefore prevented a finding that she had “sustained a personal injury by accident arising out of and occurring in the course and the scope of her employment with the defendant employer herein.”
Before the court, claimant’s first contention is that the burden of proving noneompensability should have been placed upon the employer. She concedes that ordinarily the claimant has the burden of proving compensability in a workmen’s compensation proceeding, see, e.g., Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969), but attempts to distinguish this proceeding from the normal workmen’s compensation proceeding on the basis that in this “no insurance” proceeding the employer is protesting the initial Industrial Commission compensability award. In addition, she relies on A.R.S. § 23-907(A), which permits an employee to pursue a civil remedy against an uninsured employer and shifts the burden of proving negligence from the employee to the employer. She argues that this court should impose a similar shift of burden of proof when the employee elects to follow the statutory remedy allowing workmen’s compensation benefits.
 These arguments ignore the plain meaning of A.R.S. § 23-907(B). That subsection in relevant part provides that if in a “no insurance” situation an employee elects to pursue the remedy of workmen’s compensation, “the commission shall hear and determine the application for compensation in the manner other claims are heard and determined before the commission.” A.R.S. § 23-907(B). An unambiguous statute should be interpreted to mean what it plainly states unless an absurdity results. E.G., Sunstate Equip. Corp. v. Industrial Commission, 135 Ariz. 477, 662 P.2d 152 (App.1983). The plain meaning of this subsection is that a no insurance claim is to be heard and determined in the same manner as an ordinary claim. Accordingly, the “no insurance” claimant must bear the same burden of proving compensability as does the ordinary claimant.
Russell v. Industrial Commission is consistent with this interpretation of § 23-907(B). Before the 1969 statutory amendments, the Industrial Commission made an initial compensability award in all cases. Compare A.R.S. § 23-1061 (1956) (repealed) with A.R.S. § 23-1061 (Supp. 1982). In Russell, the Industrial Commission’s initial award denied compensability and the claimant protested. This protest had the effect of “setting aside” the prior award and opening “the matter for a full hearing on the merits” with the same burden of proof “as prior to the initial award.” Russell, 104 Ariz. at 553, 456 P.2d at 923. Although the Russell court meant that the claimant’s burden was not increased because he protested the initial determination, the same analysis applies to the present case. The timely protest set aside the initial compensability award, opened the matter for a full hearing on the merits, *551 and the burden of proof remained the same as prior to the initial award.
The claimant emphasizes that the initial Commission award for a compensable claim was made after an investigation. This investigation, however, was not adversary. The alleged employer had no opportunity to present evidence to support his case or to cross-examine the claimant or her witnesses. The first full hearing on the merits, therefore, was the hearing before the administrative law judge. An initial compensability award favoring the claimant does not justify shifting the burden of proving compensability from her to the alleged employer.
The claimant next argues that the administrative law judge abused his discretion by denying the claim because of his finding that the claimant lacked credibility. We disagree.
The administrative law judge is the sole judge of witness credibility. E.g., Royal Globe Ins. Co. v. Industrial Commission, 20 Ariz.App. 432, 513 P.2d 970 (1973). Although he may not reject a claimant’s testimony simply because it is self-interested, he may reject it if it is self-contradictory, inconsistent with other evidence, or directly impeached. E.g., Larson v. Industrial Commission, 114 Ariz. 155, 559 P.2d 1070 (App.1976). We find sufficient evidence to support a finding by the administrative law judge that the claimant lacked credibility.
The claimant testified that during the week before the accident she met her alleged employer and agreed to work for him selling ice cream from his truck. According to her, she went to his home to begin working on the day of the accident. She testified that because the truck’s freezer was broken, the alleged employer took her to get dry ice, filled the truck with gasoline, supplied her with ice cream, and gave her change for sales. He supposedly also agreed that she should take the truck to local swap meets, rather than to the Pas-qua Indian Village because the truck’s music system was also broken. She stated that while she was at one of the swap meets, the alleged employer met her and hired a Mr. Bonsall as a substitute driver. Mr. Bonsall was driving the truck back to the alleged employer’s home later that day when the accident occurred.
The alleged employer’s testimony was directly in conflict with that of the claimant. He testified that he had discussed employment with the claimant during the week before the accident, but he contradicted the remainder of her testimony. According to him, when the claimant arrived to begin working on the day of the accident, he told her that she could not use the truck because the freezer had broken. At the claimant’s request, he then loaned his truck to her to sell apples at swap meets. The claimant had sold apples before. He admitted seeing the claimant at one of the swap meets and talking to Mr. Bonsall about employment, but denied hiring him. He also denied that he supplied claimant with dry ice, and stated that dry ice would not keep the ice cream cold enough to sell. He also denied that he had any plans for claimant to sell ice cream in the Pasqua Indian Village, because a special license would be required.
Mr. Bonsall testified that he had discussed employment with the alleged employer, but was not hired. He also admitted, contrary to claimant’s testimony, that when the accident occurred they were driving to his home, not to the alleged employer’s.
The claimant argues that the administrative law judge arbitrarily rejected her testimony because it was corroborated. Claimant’s reliance upon “corroboration” is misplaced. In view of the direct conflict in the testimony between that of claimant and that of the alleged employer, mere corroboration would not require that the administrative law judge resolve all conflicts in her favor. The claimant also argues that the contradictions between her testimony and Mr. Bonsall’s are merely collateral. This is immaterial. The contradictions impeach the claimant’s credibility and therefore support an inference that her claim that she *552 was hired also lacked credibility. See generally McCormick, Law of Evidence, § 47 (Cleary 2d ed. 1972).
The alleged employer’s testimony directly contradicted the claimant’s testimony. The administrative law judge as the trier of fact was entitled to resolve this conflict against the claimant. This court will not substitute its judgment for that of the administrative law judge. See, e.g., Ayer v. Industrial Commission, 23 Ariz.App. 163, 531 P.2d 208 (1975).
For the foregoing reasons, the award is affirmed.
GRANT, P.J., and EUBANK, J., concur.

. When an injured employee proceeds before the Commission on a claim involving an uninsured employer, any benefits awarded to the employee are paid from the Commission’s “special fund” established pursuant to A.R.S. § 23-1065, and the payments become a lien against the uninsured employer's property.