747 P.2d 1200

**Hensel PHELPS, Petitioner Employer,**

**Aetna Casualty & Surety Co., Petitioner Carrier,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Walter Dice, Respondent Employee.**

**No. CV 86–0604–PR.**

Supreme Court of Arizona, In Banc.

Dec. 15, 1987.

502

Bury, Moeller, Humphrey & O'Meara by J. Michael Moeller and Marshall Humphrey III, Tucson, for petitioner employer/carrier.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent Indus. Com'n.

Dix, Rehling & Waterman by Charles G. Rehling II, Tucson, for respondent/employee Walter Dice.

CAMERON, Justice.

## I. JURISDICTION

Walter Dice, petitioner, seeks review of a court of appeals' decision which set aside an award of the Industrial Commission of Arizona (Commission). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 23–948.

## II. QUESTION PRESENTED

We must determine whether the testimony of the treating physican establishes a compensable heart-related injury meeting the requirements of A.R.S. § 23–1043.01(A).

## III. FACTS

Petitioner severely fractured his left leg in seven places within the scope and course of his employment on 24 November 1980. From the date of the accident until release by his physician in August 1984, petitioner received temporary workers' compensation benefits. During the period December 1983 to September 1984, petitioner was unemployed due to recurring stability problems with his leg. On 8 September 1984, while unloading building materials, petitioner experienced severe chest pains. Petitioner was hospitalized and diagnosed as suffering from a myocardial infarction. Petitioner subsequently underwent surgery for a quadruple by-pass.

In December 1984, the workers' compensation insurance carrier, Aetna Casualty & Surety Company, terminated temporary compensation benefits. In March 1985, pursuant to A.R.S. § 23–1061(J), petitioner filed a new report of injury and petitioned to reopen the claim. At the hearing, all parties stipulated to a permanent partial disability of the petitioner's leg.

The issue presented to the administrative law judge by the evidence was whether petitioner's myocardial infarction was related to the industrial injury. At a deposition, Dr. Katzenberg testified, in part, as follows:

MR. REHLING [petitioner's attorney]: I think our claim was that the inactivity may have masked the evidence of heart disease because he was inactive and he was eventually prescribed to become as active as possible, so he's following normal medical activities, advice. There is no criticism there, and the activities he was performing at the time due to his weakened leg, caused him to modify his lifting mechanics so as to cause a great strain on lifting; he eventually had to hurl one hundred pound bags of cement due to the weakness of his leg, because he couldn't squat to lift it from his truck. That is the essence of our claim. It is multifaceted.

Q: Okay. Assume that to be true, I still want to know whether there is anything other than a possible connection that you have described it.

A: [Dr. Katzenberg] No. I think possible has to be the word used to describe the connection.

Dr. Katzenberg testified at the hearing on direct examination that the unloading activity performed by petitioner constituted an extreme exertion of effort and that it was reasonably, medically probable that the effort contributed to the onset of the heart attack. He also concluded that the effort of lifting and hurling the bags due to the modified lifting mechanics would be a substantial contributing cause of the heart attack. He further opined that the inactivity due to the industrial leg injury masked the symptoms of coronary artery disease as "a reasonable hypothesis."

On cross-examination, Dr. Katzenberg was even more explicit. He was asked whether he believed, within reasonable medical probability, that petitioner's industrial leg weakness was a substantial contributing cause to the heart attack. He answered:

A: Yes. I think that the weakness in his leg and the strain—well, for—I'll say yes for two reasons, one is that he wasn't active for a long time, which could have played a role in masking and which might have occurred at a lower level of activity, Number One, due to the leg; and Number Two, from the way that the mechanics of lifting were described, I think he stresses his symptoms, meaning elevated his blood pressure, requiring greater output of his heart to an extent that would have exceeded what he would have done had he lifted normally using his legs.

So, for those two reasons, yes, I think that the leg could have been a substantial contributing factor.

By Mr. Moeller [carrier's attorney]:

Q: Within reasonable probabilities?

A: Yes.

Dr. Katzenberg was asked to explain the terminology [substantial, possible, and probable] as he understood the terms:

A: The terminology you are using is a little different than the terminology used at the deposition, which is, I think, what I'm responding to.

Q: The terminology of possible and probable?

A: Well, the substantial, you were using terms like substantial.

Q: Contributing.

A: Contributing factor, which I—maybe you know, I'm interpreting your words differently, but I can, in my mind, correlate substantial contributing factor and possible. That's what I was doing.

Q: The problem here is we are not—nobody is disputing the fact the exertion that he had on that day contributed to his heart attack. The question is whether the leg was a substantial contributing cause within reasonable medical probabilities. I believe your testimony was possible, was the only connection I could make. Is that, is that correct, or am I misreading what you are saying?

A: You are correct. You read the text.

Q: All right. And is that your testimony here today, also, or are you changing that testimony in some fashion?

A: Well, you know, you are using different terminology. I think that [it] is possible that the leg contributed to his heart attack for the two reasons I have stated, and I think that within—that there is a substantial probability that that relationship exists, and I don't think those are mutually exclusive ways of looking at it.

Q: Oh, I see.

So, there is a possibility that it contributed to it?

A: A possibility doesn't imply a percent change substantial to me.

Well, here is how I am looking at it, the possibility to me doesn't imply that it is a 70% possibility or it is a 30% possibility. It just implies that it is possible. It is possible, if the rockets go off, the missile shuttle will go up. Substantial, to me implies more than a 50% possibility, which is different than a possibility, and that's, you know, I think I have got to explain the semantics to you.

Q: Well, do you consider substantial more than possible?

A: I think they are different. I think substantial is a more precise term. I

think substantial implies, at least a 50% probability, whereas possibility doesn't really imply.

Q: Therefore, it is only a possibility, you can't go any higher than a possible connection between the leg and the infarct?

A: Yes.

Q: You can't jump the next step and say that the leg substantially caused the infarct?

A: Well, depending on the question you ask me, I could.

Q: Well, the questions were asked here with a hypothetical set of facts that haven't changed. They are the same ones you heard this morning, the same ones there. Have they?

A: No. No, it is true I was responding to the terms.

The administrative law judge accepted the testimony of Dr. Katzenberg, one of two testifying physicans, and found:

6. Board-certified internist and cardiologist Charles Katzenberg, M.D., examined and treated the applicant beginning in the emergency room on September 8, 1984. Based on findings at those examinations, angiogram, EKG and other test results, Dr. Katzenberg testified that the applicant sustained a myocardial infarction on September 8, 1984 due to a 99% blockage of the left anterior descending coronary artery. Dr. Katzenberg testified both at hearing and at deposition that the applicant's heavy exertional activity on September 8, 1984, after the applicant's prolonged period of relatively sedentary activity, was a substantial contributing cause of this infarct. At deposition, Dr. Katzenberg opined that it was only possible that the alteration of the applicant's working posture due to his left leg injury was a substantial contributing cause of this infarct. At hearing, Dr. Katzenberg testified that this alteration of the applicant's working posture due to the left leg injury was probably a substantial contributing cause of this infarct, given the definition of substantial as "more than insubstantial or slight." *See Skyview Cooling*

*Co. v. Industrial Commission*, 142 Ariz. 554, 691 P.2d 320 (App.1984). Dr. Katzenberg explained that at deposition, he was using "substantial" as meaning more than 50 percent.

7. Board-eligible internist and cardiologist William H. Clark, M.D., interviewed the applicant on July 29, 1985 and reviewed his medical records. Given the September 1984 date of the applicant's infarct, the lack of an examination by Dr. Clark in no way effects the weight to be accorded his testimony. *Cf. Pais v. Industrial Commission*, 108 Ariz. 68, 492 P.2d 1175 (1972). Dr. Clark testified that the applicant's heavy exertional activity on September 8, 1984, after the applicant's prolonged period of relatively sedentary activity, was a substantial contributing cause of his September 8, 1984 myocardial infarction. However, Dr. Clark testified that the applicant's left leg condition was not a substantial contributor to that infarct, neither in terms of altered work posture by the applicant on September 8, 1984 nor in terms of that injury's cause of the applicant's period of sedentary activity.

8. Where the result of an accident is not one clearly apparent to a layman, the physical condition of the injured employee and the causal relationship of the accident to such condition must be determined by expert medical testimony. *McNeely v. Industrial Commission*, 108 Ariz. 453, 501 P.2d 555 (1972). If the experts' testimony is in conflict, it is the responsibility of the Administrative Law Judge to resolve it. *Ortega v. Industrial Commission*, 121 Ariz. 554, 592 P.2d 388 (App.1979). Many factors enter into a resolution of a conflict in expert medical evidence including the diagnostic methods used, the qualifications and backgrounds of expert witnesses, their experience in diagnosing the type of ailment involved, and their conscious or unconscious bias or interest in the result to be reached. *Ison v. Western Vegetable Distributors*, 48 Ariz. 104, 59 P.2d 649 (1936); *Cash v. Industrial Commission*, 27 Ariz.App. 526, 556 P.2d 827 (1976).

9. The conflict in medical evidence is resolved by adopting the testimony of Dr. Katzenberg as being more probably correct and well-founded. The applicant's November 24, 1980 left leg injury and its sequelae were substantial contributing causes of the September 8, 1984 blockage of the applicant's left anterior descending coronary artery and the resulting myocardial infarction. That infarction is a compensable condition under this claim pursuant to A.R.S. § 23–1043.01(A) as that statute is explained in *Skyview Cooling Co. v. Industrial Commission, supra.* The applicant is entitled to temporary total and/or temporary partial disability compensation, as well as medical, surgical and/or hospital benefits, to the extent provided by law, from November 24, 1980 until such time as this condition is/was medically stationary.

The carrier sought judicial review, arguing that the testimony of Dr. Katzenberg failed to satisfy petitioner's burden of proving that the leg injury substantially contributed to the myocardial infarction.

The court of appeals, in a memorandum decision, set aside the award. In doing so, the court specifically focused on Dr. Katzenberg's testimony as to whether the leg injury was a "substantial contributing factor" within a degree of medical probability to the infarction. The court of appeals believed Dr. Katzenberg's testimony to be equivocal and that the judgment of the administrative law judge could not be upheld due to Dr. Katzenberg's confusion concerning whether the injury "possibly," "probably," or "substantially" caused the infarction. We granted the worker's petition for review.

## IV. DISCUSSION

The applicable statute reads:

A heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some injury, stress, or exertion related to the employment was a substantial contributing cause of the heart-related or perivascular injury, illness or death.

A.R.S. § 23–1043.01(A)

The cases interpreting A.R.S. § 23–1043.01(A) suggest that the legislature accomplished a two-fold purpose by enacting the statute. First, holdings of this court that heart attacks may be accidents within the meaning of the Workers' Compensation Law were codified. *See Bush v. Industrial Commission,* 136 Ariz. 522, 667 P.2d 222 (1983). Second, the legislature imposed an additional requirement that the job-related injury be a substantial contributing cause of the heart injury. *Id.* at 523, 667 P.2d at 223.

Thus, according to A.R.S. § 23–1043.01(A), a worker claiming that a heart-related injury is an industrial injury compensable under the act must prove:

1) injury, stress, or exertion;
2) which is related to his/her employment; and
3) which is a substantial contributing cause of the heart related injury.

If the result of an industrial accident is not clearly apparent to a layman, then the causal relationship of the accident to the physical or mental condition complained of must be established by expert medical testimony. *Eldorado Insurance Co. v. Industrial Commission,* 27 Ariz.App. 667, 670, 558 P.2d 32, 35 (1976).

The carrier argued, and the court of appeals agreed, that Dr. Katzenberg's testimony was equivocal as to the leg injury contributing substantially to the myocardial infarction and thus failed to meet the burden of proof necessary to establish a compensable injury under A.R.S. § 23–1043.01(A). We disagree. An administrative law judge has the prerogative to resolve conflicting medical opinions. *Stephens v. Industrial Commission,* 114 Ariz. 92, 96, 559 P.2d 212, 216 (App.1977). In the instant case, the administrative law judge heard the testimony of two experts but discounted the testimony of one cardiologist and relied on the testimony of treating cardiologist, Dr. Katzenberg.

Since medical certainty in this context is impossible, at a minimum reasonable assurance must exist that the industrial injury caused the infarction. Reasonable assurances are met if medical probabilities of industrial contribution exist. These probabilities are met for purposes of the act if the possibility can be defined as "more than insubstantial or slight." *Skyview Cooling Co. v. Industrial Commission*, 142 Ariz. 554, 559, 691 P.2d 320, 325 (App.1984). In reviewing Dr. Katzenberg's testimony, we believe that this standard was met to substantiate medical causation. *See infra*. Therefore, the administrative law judge could find that there was a "recognizable causal connection," between the injury and infarction. *Bush v. Industrial Commission*, 136 Ariz. 522, 524, 667 P.2d 222, 224 (1983). As we have stated:

> [t]here being no evidence of any negligent conduct or fault on the employee's part which led to the subsequent injury, it is well established that where a weakened member such as a leg contributes to a later fall or injury, such later fall or injury is a compensable consequence of the prior industrial injury.

*Carabetta v. Industrial Commission*, 12 Ariz.App. 239, 241, 469 P.2d 473, 475 (1970).

In the present case, the administrative law judge was faced with determining whether an employee had sustained a myocardial infarction caused by a previous compensable impairment causally related to an industrial injury. The administrative law judge is the sole judge of the witnesses credibility. *Holding v. Industrial Commission*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App.1984). As such, he may reject testimony if it is self-contradictory, inconsistent with other evidence, or directly impeached. *Id.*

After hearing the evidence and weighing the witnesses credibility, the administrative law judge understood Dr. Katzenberg's opinion that the leg injury "substantially contributed" to the myocardial infarction. Based on Dr. Katzenberg's factual opinion on the record, understanding of issues on cross-examination and testimony at deposition, it appears that, although he failed to use the prescribed legal terminology, he understood that "substantial" meant more than "insubstantial or slight" and, in testimony, affirmatively conveyed such a belief. In this context, mere semantics of the language used will not preclude the award.

The employer and carrier assert that even assuming this liberal interpretation of "substantial," the petitioner failed to meet his burden of proof. However, proof does not require magic words. As stated by Professor Larson:

> The compensation process is not a game of 'say the magic words' in which the rights of injured workers should depend on whether a witness happens to choose a form of words prescribed by a court or legislature.

3 A. Larson, *The Law of Workmen's Compensation* § 80.32(d), at 15–460 to –461 (1983).

When the "magic word" has not been used in the medical witness's testimony, it becomes necessary for us, as in the present case, to review thoroughly and carefully such testimony. The question to be resolved then, is whether any reasonable theory of evidence supports the hearing officer's resolution of the question of causation as it relates to the myocardial infarction. If the testimony in the context in which it was given establishes "substantial contribution," the burden of proof is satisfied. *Skyview Cooling Co.*, 142 Ariz. at 559, 691 P.2d at 325.

The Commission's findings will be disturbed only if its conclusion cannot be reasonably supported on any reasonable theory of evidence. An appellate court is limited to that role even if its members would reach a different conclusion if sitting as the triers of fact. *Perry v. Industrial Commission*, 112 Ariz. 397, 399, 542 P.2d 1096, 1098 (1975). We believe the award of the administrative law judge was reasonably supported by the evidence.

## V. DISPOSITION

We have reviewed the medical evidence in a light most favorable to sustaining the award of the Commission. *U.S. Fidelity &*

*Guaranty Co. v. Industrial Commission,* 114 Ariz. 472, 476, 561 P.2d 1244, 1248 (App.1977). We find that the evidence supports the award and cannot say that the administrative law judge erred in reaching his decision. We, therefore, reinstate the award of compensation.

GORDON, C.J., and FELDMAN, V.C.J., concur.

MOELLER, J., did not participate in the determination of this matter.

HOLOHAN, Justice, dissenting.

From my review of the medical testimony I agree with the conclusion of the Court of Appeals that the judgment of the administrative law judge is not supported by the evidence; I, therefore, dissent.