788 P.2d 1244

**Richard SPIELMAN, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Mesa Drywall, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 89–047.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 26, 1989.

Review Denied April 17, 1990.

Hocker & Axford, P.C. by R. Kelly Hocker, Tempe, for petitioner.

Anita R. Valainis, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Christopher E. Kamper, Chief Counsel, State Compensation Fund, and Catherine

A. Santasine, Phoenix, for respondents Employer & Carrier.

EUBANK, Judge.

This is a special action review of an Industrial Commission award denying a petition to reopen. The sole issue preserved for review is the sufficiency of the evidence to support this denial. Because the evidence is sufficient, we affirm the award.

Petitioner employee (claimant), while working as a drywaller in June 1979, suffered a compensable left shoulder injury.[1] He underwent surgery in July 1979 for an impingement of the anterior lateral aspect of the acromion and the coracoacromial ligament. A small rotator cuff tear was also discovered and repaired. After this surgery, there was no detectable impingement.[2]

Claimant was independently evaluated in February 1981. He then complained of constant left shoulder pain but had good range of motion (170 degrees abduction and flexion). The consultants concluded that the industrial injury was stationary with a 10% permanent impairment. The claim was subsequently closed with an unscheduled disability. Claimant was disabled from returning to drywalling, but he was rehabilitated as a respiratory therapist and was awarded permanent disability benefits for the difference in his earning capacity.

In August 1988, claimant filed a petition to reopen, which alleged that "[m]y shoulders have deteriorated to the point they are so painful I can't use them." He supported this petition with an August 15, 1988 report of a left shoulder arthrogram, which indicated that no evidence of capsulitis or rotator cuff tear was discovered.

Claimant's treating physician, Mark Zachary, M.D., performed surgery on August 25, 1988 for a left shoulder impingement. Dr. Zachary excised a large osteophyte (bony outgrowth) and a thickened bursal sack, released the coraco-acromial ligament, and removed additional bone from the front of the scapula.

Respondent carrier (SCF) denied reopening. Claimant requested a hearing, and one was subsequently scheduled. Pending the hearing, orthopedic surgeon, Gerald C. Moczynski, M.D., examined claimant at the carrier's request.

At the hearing, claimant, his wife, and Drs. Zachary and Moczynski appeared. Claimant testified that his left shoulder was stable for several years and then began progressively to deteriorate. He had increased pain and decreased range of motion. According to claimant, he saw Dr. Fisler, who provided injections and physical therapy. This gradual progression continued until August 1988, when claimant awoke in acute pain and was unable to move his shoulder. Claimant then saw Dr. Zachary, who subsequently performed the second surgery. Claimant testified that this surgery had not improved his left shoulder condition. He continued to see Dr. Zachary for conservative care, and Dr. Zachary had restricted him from working in December 1988. Claimant's wife, a physical therapist, corroborated this history of progressive worsening culminating in an acute condition in August 1988.

Dr. Zachary first saw claimant on August 5, 1988. Claimant then complained of severe left shoulder pain developing a few days before. Claimant reported having had surgery about five years previously for dislocations of his shoulders and having suffered a recent "twisting injury." Regarding this recent history, Dr. Zachary testified that he could

not recall exactly how the twisting injury might have happened. To my recollection, [claimant] has had shoulder pain on and off, and that has been treated by Dr. Fisler, and he was still symptomatic even

---

1. The record is unclear whether this was an acute or a gradual injury.

2. Claimant subsequently developed a right shoulder impingement and underwent surgery for it as well. The record is unclear, but the right shoulder condition apparently was compensated under the left shoulder injury claim.

prior to that sudden onset of shoulder pain.

.  .  .  .  .

... He might have turned his shoulder the wrong way, tried to reach for something. I do not recall him saying that he had what I would call a traumatic injury where if something fell on him, or he jumped from whatever. But from my recollection this is the best I can tell you.

Regarding causation in general, Dr. Zachary testified that an impingement syndrome could recur without an intervening injury. Although such a recurrence would be rare, it is more likely if a patient does repetitive overhead motions. Regarding the cause of claimant's impingement syndrome in particular, Dr. Zachary testified as follows:

As I compared my operative report with Dr. Gardner's [the first surgeon] I saw that it's basically the same condition and the same diagnosis. *How that relates to his industrial injury, I feel is something for you to resolve.* It is my opinion, it is basically the same condition that [claimant] had suffered from five years ago and is basically the same condition that I have treated a few months ago and am still treating. (Emphasis added).

Dr. Zachary was not asked to explain his surgical findings or why the second surgery had failed to release the impingement. He did confirm that claimant remained symptomatic and was currently disabled from working as a respiratory therapist.

Dr. Moczynski testified that claimant's restricted range of motion was not improved by the second surgery. He also confirmed that the range of motion had significantly diminished since the February 1981 independent medical evaluation. Dr. Moczynski diagnosed claimant's current condition to be a tendonitis impingement. In his opinion, this condition was unrelated to the industrial injury. He testified that a recurrence was unlikely because the first surgery had removed the anterior/interior portion of the acromion, which eliminated the anatomic cause for a compression syndrome. Furthermore, given the sudden onset of pain in August 1988 and Dr. Zachary's history of a twisting injury, Dr. Moczynski concluded that a sudden change of condition was more likely. Dr. Moczynski also assumed that claimant had been asymptomatic over a long period and had not needed medical treatment. He had not been provided a history of the treatment by Dr. Fisler or with Dr. Fisler's medical records, nor was he asked how this history would affect his opinion.

The administrative law judge (A.L.J.) then issued the award. He noted the history of the twisting injury, Dr. Zachary's inability to provide any factual detail concerning it, and claimant's denial that an injury had occurred. He also noted that Dr. Moczynski had testified that some intervening injury had probably caused claimant's current condition. But the A.L.J.'s dispositive findings were that medical evidence was necessary to establish a causal connection and that Dr. Zachary's testimony was insufficient to satisfy claimant's burden of proof:

9. While it is clear, according to medical evidence, that applicant had a similar type problem in 1988 to that which he had in 1988 [sic], an impingement syndrome in left shoulder, the testimony of Dr. Zachery [sic] is insufficient to establish that worsening of applicant's condition in August 1988 and subsequent surgery was related to applicant's 1979 injury and/or surgery of 1979. It is deemed Dr. Zachery's [sic] testimony is insufficient to establish a conflict with that of Dr. Moczynski who indicated applicant's condition in 1988 was unrelated to injury and surgery of 1979. See the following from Dr. Zachery's [sic] testimony on page 19, lines 13–25, TR. February 24, 1989, reading as follows:

"Q. Doctor, do you have—having read the record of Dr. Gardner and having seen his shoulder—examined his shoulder, do you have an opinion as to whether or not this condition you found was connected with or a continuation of the pre-existing injury which he had?

"A. As I compared my operative report with Dr. Gardner's I saw that it's basically the same condition and the same diagnosis. How that relates to his industrial injury, I feel is something for you to resolve. It is my opinion, it is basically the same condition that Mr. Spielman had suffered from five years ago and is basically the same condition that I have treated a few months ago and am still treating."

10. Dr. Zachery [sic] did not render an opinion as to whether care for which he was treating applicant was related to injury of 1979; he merely indicated it was the same type of condition.

The A.L.J. accordingly denied reopening.

Claimant requested administrative review without a memorandum supporting this request. The A.L.J. affirmed the award without modification. This special action followed.

On review, claimant argues that, (1) the award lacked a material finding rejecting claimant's credibility, (2) Dr. Zachary's testimony was sufficient, (3) medical evidence was unnecessary to establish causation, and (4) Dr. Moczynski's testimony was insufficient.

■ Regarding argument (1), claimant requested administrative review without a supporting memorandum. Such a summary request is legally sufficient. See A.R.S. § 23–943(A). But a summary request preserves for review only matters extant in the record, such as objections, and the sufficiency of the evidence to support the award. See, e.g., Stephens. v. Industrial Comm'n, 114 Ariz. 92, 559 P.2d 212 (App. 1977). Because claimant did not request the A.L.J. to make a specific finding regarding claimant's credibility, he cannot on review seek reversal for lack of such a finding.

Claimant's last argument (4) is unnecessary to resolve because the award is based upon the insufficiency of Dr. Zachary's causation opinion, not the sufficiency of Dr. Moczynski's opinion. Even if we accepted the argument that Dr. Moczynski's causation opinion lacked foundation, we would still affirm the award unless other evidence established that the industrial injury caused or contributed to the current impingement syndrome. In this context, we note that the current award does not include even a boilerplate finding concerning resolution of medical conflicts. Instead, the A.L.J. focused on the burden of proof. So must we.

■ We turn then to the sufficiency of Dr. Zachary's testimony. We agree that magic words are unnecessary. See Phelps v. Industrial Comm'n, 155 Ariz. 501, 747 P.2d 1200 (1987). Here, Dr. Zachary did not commit to any causation opinion at all. Claimant's argument on review simply sidesteps the problem by deleting Dr. Zachary's noncommittal statement from the quotation of his testimony in the opening brief. Similarly, claimant did nothing to confront the problem during the hearing. Dr. Zachary's statement that claimant had the same condition was at best ambiguous. It could have been taken, as claimant suggests, to mean that claimant's original condition had reappeared. Or it could have been taken, as the A.L.J. found, to mean only that claimant now suffered from the same type of condition. It was claimant's burden to ask further questions of Dr. Zachary to resolve this ambiguity, and he did not do so. Nor did he question Dr. Zachary about his surgical findings or about the failure of the second surgery. Finally, even if we assume arguendo that the A.L.J. could have interpreted Dr. Zachary's testimony as an implicit causation opinion, this was not the only reasonable interpretation. Because the A.L.J.'s interpretation was reasonable, this court must accept it. See Phelps v. Industrial Comm'n, 155 Ariz. at 506–07, 747 P.2d at 1205–06.

Claimant next argues that medical evidence was unnecessary to establish causation, citing, Estes Corp. v. Industrial Comm'n, 23 Ariz.App. 370, 533 P.2d 678 (1975) and State Compensation Fund v. Mohrman, 18 Ariz.App. 447, 503 P.2d 405 (1972). This authority applies, claimant argues, because the only logical conclusion is that claimant's current impingement syn-

drome developed from or is a continuation of the prior impingement syndrome.

*Estes* and *Mohrman* have been strongly criticized for departing from general norms of proof:

It has long been the law of this jurisdiction that where the result of an accident is not clearly apparent to a layman, these two elements [injury and causation] must be determined by expert medical testimony. The reasons for this rule are obvious. A layperson does not possess the knowledge necessary to make an accurate diagnosis or to describe a condition's etiology. Even a logical interpretation of events surrounding the industrial incident and claimant's ensuing complaints, when made by a layman, is no more than speculation.

The two most often cited examples of injuries which are clearly apparent to laymen both in their existence and causal relationship to the industrial accident, are the loss of a limb or an external lesion. (citations omitted).

*Western Bonded Products v. Industrial Comm'n*, 132 Ariz. 526, 527–28, 647 P.2d 657, 658–59 (App.1982). *But cf.* 2B A. Larson, *Workmen's Compensation Law* § 79.51(c) (1989) (natural inference of causation if injury appears soon after accident in same place where force was applied and with observable symptoms).

Causation in the current case is not readily apparent to a layman. Under the standard of *Western Bonded Products*, therefore, expert testimony was necessary. Moreover, even if this standard is too strict, we disagree that the current case is a candidate for a more liberal standard.

Lay logic alone does not explain how the second impingement developed from the first after the anatomic cause of the original impingement was removed, or why the first surgery was successful but the second was unsuccessful in releasing the impingement. Under these circumstances, the A.L.J. properly required an expert opinion to establish causation.

In this context, claimant also asserts that his case is similar to *Eldorado Insurance Co. v. Industrial Comm'n*, 27 Ariz.App.

667, 558 P.2d 32 (1976). In *Eldorado*, the employee allegedly injured his lower back while pulling a 100–pound tamper. The only medical evidence of record was a physician's initial report prepared by a doctor who examined the employee some eighteen hours after the alleged injury. This report recorded the history of the tamper pulling accident and a diagnosis of low back strain, but it did not indicate the conclusion that the accident caused the strain. Based on this evidence, compensability was awarded, and this court affirmed because causation was reasonably implied. *Id.* at 669, 558 P.2d at 34.

We disagree that the current case is analogous. The physician's report used in *Eldorado* is a prescribed Industrial Commission form used to report a work-related injury. The form of the document itself therefore strongly implied a causal connection. In the present case, claimant submitted a petition to reopen and supported it with a report that did not identify any abnormality or draw any conclusion about causation. In *Eldorado*, the physician examined the employee within hours after the accident and this history immediately preceded the diagnosis in the report. In the current case, years have passed since the industrial injury and the first surgery. Additionally, there is a disputed history of an intervening injury and an undisputed history of intervening work.

For these reasons, we conclude that reasonable evidence supports the award. We accordingly affirm the denial of the petition to reopen.

GERBER, J., concurs.

FIDEL, Judge, specially concurring:

I concur in the decision of the majority. I write separately, however, to express my disagreement with *Western Bonded Products v. Industrial Comm'n*, 132 Ariz. 526, 647 P.2d 657 (App.1982). *Western Bonded* states, as the majority points out, that:

Even a logical interpretation of events surrounding the industrial incident and claimant's ensuing complaints, when

**498**

made by a layman, is no more than speculation.

*Id.* at 527, 647 P.2d at 658.

I cannot agree with so broad a statement of the law.

The court has not spoken with one voice on this point. *Western Bonded* clashes with two earlier decisions by this court, *State Compensation Fund v. Mohrman,* 18 Ariz.App. 447, 503 P.2d 405 (1972), and *Estes Corp. v. Industrial Comm'n,* 23 Ariz.App. 370, 533 P.2d 678 (1975). The supreme court has not resolved the conflict.

Few would disagree that an expert is usually required to define the medical consequences of a workplace accident. *Western Bonded* errs, however, in my view by exalting the usual into an axiom without exceptions. *Mohrman* and *Estes* recognize that, in some cases, adequate causal inferences may be drawn from lay and circumstantial evidence. Larson favors this more flexible approach—*see* 2B A. Larson, *Workmen's Compensation Law* § 79.51(c) (1988)—and I believe it the correct one under Arizona law.

In this case, however, lay testimony and circumstantial evidence were insufficient to establish whether claimant's left shoulder impingement in 1988 resulted from his original industrial injury or from an unrelated, intervening cause. The claimant failed to offer a supporting opinion on this issue from Dr. Zachary or any other expert. Thus, I concur in the majority's decision to affirm.