NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRANCES GOETZINGER-AMENDT,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

BOARD OF NURSING CARE EXAM*,**
*Respondent Employer*,

THE STATE OF ARIZONA – DOA RISK MANAGEMENT*,**
*Respondent Carrier*.

No. 1 CA-IC 18-0031
FILED 2-26-2019

Special Action – Industrial Commission
ICA Claim Nos.
20011-830742*
20012-220932**

Carrier Claim Nos.
2001030850*
2001030330**
Gaetano J. Testini, Administrative Law Judge

**AWARD AFFIRMED**



COUNSEL

Frances Goetzinger-Amendt, Surprise
*Petitioner*

The Industrial Commission of Arizona, Phoenix
By Stacey Ann Rogan
*Counsel for Respondent*

Arizona Attorney General's Office, Phoenix
By Charles W. Ferris, Jr.
*Counsel for Respondent Employer and Respondent Carrier*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**C R U Z**, Judge:

**¶1** Frances Rose Goetzinger-Amendt ("Claimant"), a former employee of the State of Arizona ("Employer"), appeals the denial of two separate notices—one terminating her unemployment claims, and the other denying her petition to reopen her claims. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Claimant suffered two separate work-related injuries in March and July of 2001, respectively. She filed workers' compensation claims for both, and the Arizona Department of Administration Risk Management Division (the "Carrier") accepted both and paid benefits. On November 13, 2001, the Carrier issued a Notice of Claim Status ("Notice") closing the March 2001 claim without any permanent impairment. On November 12, 2002, the Carrier issued a Notice closing Claimant's July 2001 claim without any permanent impairment, supported by a group consultation report and an Addendum Report by Drs. Brian Borland and Michael Epstein, a psychiatric evaluation report from Dr. Robert Bevan, and a written progress note from Dr. Kevin Ladin. In December 2002, Claimant filed a petition to reopen the claim from the March 2001 injury; the Carrier denied her request in a January 15, 2003 Notice.

**¶3** Claimant requested a hearing before the Administrative Law Judge ("ALJ") and appeared with representation for her first hearing before the ALJ in August 2003. Before further hearings were set, however, Claimant reached a settlement agreement (the "Settlement") with the Carrier and withdrew her hearing requests. In October 2003, the ALJ issued a decision finding, *inter alia*, the existence of a bona fide dispute, and that "[n]o duress, fraud, misrepresentations, coercion, and/or undisclosed additional agreements [were] used to achieve settlement." Accordingly, in 2003 the ALJ issued an award approving the Compromise and Settlement.

**¶4** In April 2017—some thirteen years after the Settlement—Claimant filed a complaint with the Industrial Commission ("IC") alleging the Carrier had engaged in bad faith and/or unfair claims processing of the 2001 claims under Arizona Administrative Code ("A.A.C.") R20-5-163 (the "Regulation"). Specifically, Claimant alleged that the November 12, 2002 Notice closing her claim and the January 15, 2003 Notice denying her petition to reopen violated the Regulation because such notices lacked supportive medical documentation.

**¶5** A hearing was held before an ALJ in January 2018, after which the ALJ issued a decision denying the claims. The ALJ found that the November 2002 notice was adequately supported by medical evidence, and that the Regulation did not require the Notice denying the petition to reopen to be supported by medical documentation. Claimant requested an additional hearing which the IC treated as a "Request for Review," and the IC summarily affirmed the ALJ's denial.

**¶6** Claimant filed a special action for review with this Court. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 23-948.

## DISCUSSION

**¶7** On appeal from the IC, when a case presents mixed questions of law and fact, as in this matter, "we defer to the ALJ's determination of disputed facts but review questions of law *de novo*." *Tapia v. Indus. Comm'n*, 245 Ariz. 258, 260, ¶ 5 (App. 2018); *see also Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987) (stating we will not overturn the ALJ's findings and conclusions unless they cannot be supported on any reasonable theory of the evidence).

I.      Sufficiency of Claimant's Brief

**¶8**          Employer and the Carrier ("Respondents") urge us to find that Claimant has waived all arguments on appeal.  We require petitioners on appeal to submit briefs with citations to the record, developed arguments, and references to the legal authority forming the basis of those arguments.  *See* ARCAP 13(a); *AMERCO v. Shoen*, 184 Ariz. 150, 154 n.4 (App. 1995) (stating failure to develop argument or present supporting authority on appeal waives issue).  To be sure, Claimant's briefs are deficient.  Nowhere does she cite to the record and only sparingly does she cite to legal authority.  Most concerning, however, is the lack of a developed argument in the opening brief.

**¶9**          Although this case could properly be dismissed on the basis of waiver, it is the general preference of Arizona's appellate courts to resolve cases on their merits.  *See, e.g.*, *Hill v. City of Phoenix*, 193 Ariz. 570, 574, ¶ 18 (1999).  This case dates back nearly two decades; accordingly, in the interest of affording Claimant some finality, we exercise our discretion to address the merits of this case.  *See City of Phoenix v. Fields*, 219 Ariz. 568, 573, ¶ 23 (2009) (stating that a finding of waiver "is procedural, not substantive, and may be suspended in our discretion") (internal quotations and citation omitted).

**¶10**         That notwithstanding, we decline to address all complaints merely alluded to but not developed in Claimant's brief, including any alleged "illegal" refusal to provide medical records, the ALJ's denial of her requests to subpoena certain medical professionals, alleged negligent handling of HIPAA information, and other miscellaneous complaints.

II.     Bad Faith and Insufficiency of Medical Evidence

**¶11**         Claimant asserts that Respondents acted in bad faith and engaged in unfair claims processing in each of her claims.  More specifically, Claimant alleges her claims were closed without adequate medical documentation and without proper justification, and that she was improperly denied the ability to reopen them.

      A.      The Settlement Is an Absolute Defense to Issues Covered by the Subject Notices

**¶12**         Respondents argued before the ALJ that the Settlement is a "global defense" to, and is dispositive of, this matter.  Under the terms of the Settlement, Claimant acknowledged that her medical condition (for the purposes of workers' compensation claims) was stationary and required no

active medical treatment; that she sustained no residual impairment as a result of the subject industrial episode(s); and she expressly agreed to withdraw her hearing requests. Claimant was represented by counsel when she entered the Settlement Agreement and formally waived all workers' compensation claims arising out of these work-related injuries in exchange for a one-time $15,000 payment. As previously noted, the Settlement Agreement was reviewed, accepted, and approved by the ALJ. The approval of the Settlement agreement was not timely challenged and became final. *See* A.R.S. §§ 23-942(D), 23-943(A), (B) (providing that any party dissatisfied with the award may file a request for review with the ALJ of the IC within thirty days after the mailing of the award; otherwise the award becomes final). As such, claims arising out of the November 2002 and January 2003 Notices are precluded.

> B. Whether the Notices of Claim Status Terminating Claim and Denying Claimant's Request to Reopen Violated A.A.C. R20-5-163

¶13 Claimant argues the Regulation was violated when (1) the Carrier terminated her treatment in a Notice dated November 12, 2002; and (2) the Carrier denied her application to reopen in a Notice dated January 15, 2003. Subsection (A) of the Regulation outlines the activities constituting "bad faith" on behalf of an employer or carrier. As best we can tell from the record, Claimant alleges that the Carrier and/or Employer engaged in bad faith when they failed to acknowledge her communications in violation of subsection (A)(2); falsified documents in violation of subsection (A)(2); unreasonably delayed payment of benefits in violation of subsection (A)(2); and unreasonably terminated her benefits in violation of subsection (A)(4). Regarding Claimant's subsection (B) arguments, she alleges that each of the Notices were issued without adequate supporting medical records.

¶14 During the January 10, 2018 hearing before the ALJ, the ALJ pointed out to Claimant that "a mere accusation without any evidence isn't enough to carry your burden." On review of the record, we agree with the ALJ's implicit conclusion that Claimant's allegations are unsupported by evidence. First, Claimant provides no evidence she has been denied communication concerning, or access to documentation concerning, her medical condition or the status of her industrial claims. In fact, Claimant has gathered over 1,700 pages of medical records, administrative records, and communications in pursuing her claims. Next, Claimant failed to identify any evidence to support her allegation of falsified records, nor do we find any evidence of delayed payments. Finally, the Carrier did not

unreasonably terminate Claimant's benefits because, as specifically outlined in the following paragraphs of this decision, such termination was adequately supported by medical documentation.

¶15  Finally, the record belies Claimant's subsection (B) claims. The 2002 Notice, as a notice terminating benefits, required the Carrier to submit supporting medical documentation pursuant to A.A.C. R20-5-118(B)(1) and (2). In support of its notice, the Carrier attached multiple medical reports as follows:

> 1. Drs. Borland and Epstein each signed a report concluding that "[t]here are no objective findings to support [Claimant's] complaints. . . . [Claimant] has [no] neurological or TMJ injury or diagnosis attributable to the injury in question. . . . We do not feel that supportive care is warranted . . . . [and] she is permanent and stationary."
>
> 2. Dr. Bevan issued a psychiatric report stating that Claimant's "psychiatric status is stationary."
>
> 3. Dr. Ladin submitted a report wherein he opined that Claimant's "condition from a physical medicine and rehabilitation perspective is medically stationary"—he further stated that he discharged her and would be scheduling no follow-up.

Claimant concedes she received the November 2002 Notice but denies she received the attached reports—a denial the ALJ did not find supported by the evidence. In any event, the record demonstrates that the Carrier's 2002 Notice complied with the Regulation.

¶16  Unlike the 2002 Notice, the 2003 Notice was not to terminate benefits, but instead was issued in response to Claimant's petition to reopen. In such an instance, the *claimant* is required to submit medical documentation to support her petition to reopen; contrary to Claimant's contention, the carrier is not required to submit any medical documentation when denying the petition. *See* A.R.S. § 23-1061(A) and (I); A.A.C. R20-5-133(B). Accordingly, the Carrier did not violate the Regulation when it issued its 2003 Notice.

**CONCLUSION**

¶17      Finding no error, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA